ACCEPTED
01-15-01006-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/11/2015 12:51:33 PM
CHRISTOPHER PRINE
CLERK

CAUSE NO. 01-15-01006-CV

_____

**IN THE
FIRST COURT OF APPEALS
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/11/2015 12:51:33 PM
CHRISTOPHER A. PRINE
Clerk

_____

PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.,

*Appellant*

v.

WEST GULF MARITIME ASSOCIATION, INC.
*Appellee*

_____

Appealed From the 151st Judicial District Court
Harris County, Texas
Trial Court Cause No. 2012-58827,
the Honorable Mike Engelhart, Presiding.

_____

**APPELLEE'S RESPONSE TO APPELLANT'S
EMERGENCY MOTION FOR TEMPORARY RELIEF**

_____

TO THE HONORABLE FIRST COURT OF APPEALS:

Appellee WEST GULF MARITIME ASSOCIATION files this Response to

the Appellant's Emergency Motion for Temporary Relief (the "Motion"), and in

support thereof, respectfully states as follows:

## SUMMARY OF THE RESPONSE

Appellee filed suit over three years ago. Appellant filed its counterclaim for breach of contract and declaratory judgment more than a year ago. Now, despite five prior trial settings (the most recent at the request of Appellant after it hired new counsel on the eve of trial), five motions for summary judgment on the merits (all of which were denied) and having participated in four depositions, a mediation and extensive discovery, Appellant asks this Court to stay the case from going to trial on January 19, 2016 (the 6th trial setting), while Appellant appeals the trial court's denial of its motion to compel arbitration. Because the trial court has already found that Appellant waived its right to arbitrate and refused to stay the proceedings, this Motion should be denied and the case should be allowed to proceed to trial.

## RESPONSE

### A. Appellant Has Waived its Right to Arbitration

The trial court found that the Appellant has waived its right to arbitrate. The trial court's ruling is firmly supported by the Texas Supreme Court's decisions in *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759 (Tex.2006) and *Perry Homes v. Cull,* 258 S.W.3d 580, 597 (Tex. 2008).

2

In *Vesta*, after considering and citing *Com–Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574 (2d Cir. 1991), the Texas Supreme Court held that "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation." The Texas Supreme Court in *Perry Homes* reaffirmed the holding in *Vesta* thus making the waiver issue before this Court fairly simple.

The Appellant's failure to seek arbitration during the last three years while actively and aggressively participating in the litigation of this case are exactly the type of actions that constitute waiver as set forth in *Vesta* and *Perry Homes*. In the trial court Appellant filed five motions for summary judgment, propounded written discovery on the merits (71 Requests for Admissions, 17 Interrogatories and 38 Requests for Production), produced over 32,000 pages of documents, received over 77,000 pages of documents from Appellee, participated in three depositions by agreement, attended mediation, moved for continuances, filed a counterclaim seeking a declaratory judgment and attorneys' fees, filed a motion to designate a responsible

third party, filed a motion to compel, and on the same day as the fifth trial setting, sought arbitration after the case had been pending for more than three years.[1]

On this record and considering the totality of the circumstances in this case, it is clear that Appellant has waived arbitration by substantially invoking the judicial process.

In addition, Appellee has been sufficiently prejudiced as a result of Appellant's failure to move to compel arbitration for over three years. "Prejudice" has many meanings, but in the context of waiver under the FAA it relates to inherent unfairness—that is, a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage:

> [F]or purposes of a waiver of an arbitration agreement[,] prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.

*Perry Homes* at 597, *citing Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 346 (5th Cir.2004).

---

[1] The procedural history of this lawsuit relevant to Appellant is summarized in Appellee's Response to Appellant's Motion to Compel Arbitration (*See* Tab A, pp. 3-6). Although the Appellant's attached their Motion to Compel Arbitration to their Motion at Tab B, the Appellant's did not add Appellee's Response to their Motion to Compel. As such, Appellee's response is attached hereto at Tab A and is incorporated as if fully set forth herein.

Here, Appellant is purposefully and unjustifiably manipulating the exercise of its arbitral rights to gain an unfair tactical advantage over Appellee. Appellant, on the eve of trial and after aggressively litigating this case for over three years, is now seeking to delay disposition by switching to arbitration when trial was imminent and arbitration is not. Such manipulation by Appellant to its advantage and Appellee's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law. *Perry Homes* at 597.

Additionally, the time and expense in defending an action is another factor to consider in establishing prejudice. *See Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 399 (5th Cir.1989), cert. denied, 494 U.S. 1016 (1990).

In this case, the record shows that Appellant obtained extensive discovery under one set of rules and now seeks to arbitrate the case under another. In connection with discovery, Appellee was required to electronically produce over 76,000 pages of documents at a cost of $6,046.01. Appellee also spent $3,331.47 on depositions. (*See* Tab A, Affidavit of Blake E. Rizzo, Ex. A).

Finally, evidence of compromise to WGMA's legal positions is another factor relevant to determining prejudice. *Adams v. StaxxRing, Inc.,* 344 S.W.3d 641, 652 (Tex.App.-Dallas 2011, pet. denied). Here, regardless of the fees and expenses

5

involved, Appellee was prejudiced in responding to five motions for summary judgment, because Appellant has forced Appellee to marshal its evidence, and even more damaging, marshal the thought processes and legal analysis of Appellee's attorneys on the merits.

If, after all that has occurred in this litigation, the parties are forced to arbitrate, the Appellee would be substantially prejudiced.

## B.     Temporary Relief is Not Necessary

Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 171.0259(a), the trial court shall stay a proceeding *only* if an order for arbitration was made. In this case, no such order was made and a stay is not warranted. The decision to stay the proceedings is left to the trial court's discretion. *See Williamson v. Tucker*, 615 S.W.2d 881 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) (stating that "[a] motion to stay a state court proceeding is a matter directed to the discretion of the [trial] court.").

In order to prevail on appeal, Appellant will have to show that there was no evidence to support the trial court's ruling and that the trial court abused its discretion in finding that Appellant waived its right to arbitration. *See Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 929 (Tex. App. Houston [1st Dist.] 1996, no writ) ("In an appeal from an interlocutory order denying a motion to compel arbitration, the

applicable standard of review is that of 'no evidence.' Under the 'no evidence' standard, the appellate court considers only the evidence and inferences tending to support the finding under attack and disregards all evidence and inferences to the contrary.") Like the trial court in *Pepe Int'l Dev. Co.*, the trial court did not enter findings of fact and conclusions of law[2], thus this Court must affirm the trial court's order if "there is sufficient evidence to support it upon any legal theory asserted." *Id.* Here, the record is replete with evidence supporting the trial court's ruling and the likelihood of Appellant's success on appeal is slim.

The trial court has already determined that Appellant waived its right to arbitrate and that a stay is not warranted. This Motion should be taken for nothing more than yet another attempt by Appellant's new counsel to delay these proceedings and deny Appellee its day in court.

---

[2] Of course, it was Appellant's decision not to have findings of fact and conclusions of law entered. After Appellee prepared findings of fact and conclusions of law, Appellant requested that only a simply denial of the motion to arbitrate be entered.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, APPELLEE WEST GULF MARITIME ASSOCIATION respectfully requests that the Court deny APPELLANT PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S Motion for Temporary Relief, and award Appellee such other and further relief to which it may be justly entitled.

Dated: December 11, 2015.

Respectfully submitted,

**CARRIGAN, McCLOSKEY & ROBERSON, L.L.P.**

By:＿＿＿/s/Blake E. Rizzo＿＿＿＿＿＿＿＿
Timothy M. McCloskey
SBOT:13417650
Blake E. Rizzo
SBOT: 24034073
945 Heights Boulevard
Houston, Texas 77008
713-868-5581
713-868-1275 (fax)

**ATTORNEYS FOR APPELLEE WEST GULF MARITIME ASSOCIATION**

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing response is in compliance with Texas Rule of Appellate Procedure 9.4 because it contains 1504 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font for text and 12-point Times New Roman font for footnotes, which meets the typeface requirements.

/s/Blake E. Rizzo
Blake E. Rizzo

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has this 11TH day of December, 2015, been sent to the following counsel by electronic service:

Jamey L. Voge
Brian Cooper
STUBER COOPER VOGE, PLLC
2600 Network Blvd., Suite 305
Frisco, Texas  75034
Fax:  (214) 472-2790

Thomas C. Wright
Natasha N. Taylor
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, TX 77056
Telephone: (713) 572-4321
Fax: (713) 572-4320

/s/Blake E. Rizzo
Blake E. Rizzo

## **APPENDIX**

A.     Plaintiff's Response to Professional Advantage Software Solutions, Inc.'s Motion to Compel Arbitration and Stay Proceedings

# TAB A

CAUSE NO. 2012-58827

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION | ' | IN THE DISTRICT COURT |
| | ' | |
| VS. | ' | |
| | ' | |
| BUSINESS MICROVAR, INC. D/B/A | ' | OF HARRIS COUNTY, T E X A S |
| INTERDYN BMI, PROFESSIONAL | ' | |
| ADVANTAGE, and TECHNOLOGY | ' | |
| SUPPORT, INCORPORATED | ' | 151st JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE TO PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff WEST GULF MARITIME ASSOCIATION ("WGMA") files this Response to the Motion to Compel Arbitration and Stay Proceedings (the "Motion") filed by Defendant PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC. ("ProFad"), and in support thereof, respectfully states as follows.

### INTRODUCTION

Over three years ago, on October 4, 2012, WGMA invoked this Court's jurisdiction by filing the underlying lawsuit. Now, three years later, after six trial settings, five motions for summary judgment filed by ProFad, depositions taken by agreement, and the passage of the discovery deadline, ProFad, on the eve of trial, asks this court to compel arbitration and stay the proceedings. ProFad has waived its right to arbitration and this motion should be denied.

### ARGUMENT AND AUTHORITIES

#### ProFad's Motion Must be Denied Based on Texas Supreme Court Authority

In this case, WGMA asserts that ProFad has waived its right to arbitrate. WGMA's position is confirmed by the Texas Supreme Court's opinions in *In re Vesta Ins. Group, Inc.*, 192

S.W.3d 759 (Tex.2006) and *Perry Homes v. Cull,* 258 S.W.3d 580, 597 (Tex. 2008) which are dispositive of the issue. In *Vesta*, the Texas Supreme Court held that "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation." The Texas Supreme Court in *Perry Homes* reaffirmed the holding in *Vesta* while finding that the Plaintiff had waived its right to seek arbitration.

In this case, there is no question that ProFad met all three factors outlined in *Vesta* and *Perry Homes*, as it conducted full discovery[1], filed five motions for summary judgment going to the merits, and sought arbitration only on the eve of trial after a three year delay and five separate trial settings. According to the Texas Supreme Court, ProFad's actions herein, clearly "defeat[s] the FAA's goal of resolving disputes without the delay and expense of litigation." On this basis alone, ProFad's motion must be denied.

In *Perry Homes*, the Texas Supreme Court further held that if the three factors set forth above have not been met, whether a party has waived arbitration must be decided by the Court on a case-by-case basis, based upon an examination of the totality of the circumstances. *Perry Homes* at 591.

In *Perry Homes* the Texas Supreme Court identified a variety of factors a court can consider when determining whether waiver has occurred. In making this determination, courts can consider:

  • whether the party who pursued arbitration was the plaintiff or the defendant;

---

[1] ProFad propounded 71 Requests for Admissions, 17 Interrogatories and 38 Requests for Production, produced over 32,000 pages of documents, received over 77,000 pages of documents from WGMA, issued three third party subpoenas, and participated in three depositions by agreement. See Rizzo Affidavit attached hereto as **Exhibit A**.

• how long the party who pursued arbitration delayed before seeking arbitration;

• when the party who pursued arbitration learned of the arbitration clause's existence;

• how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;

• how much time and expense has been incurred in litigation;

• whether the party who pursued arbitration sought or opposed arbitration earlier in the case;

• whether the party who pursued arbitration filed affirmative claims or dispositive motions;

• how much discovery has been conducted and who initiated the discovery;

• whether the discovery sought would be useful in arbitration;

• what discovery would be unavailable in arbitration;

• whether activity in court would be duplicated in arbitration;

• when the case was to be tried; and

• whether the party who pursued arbitration sought judgment on the merits.

*Baty v. Bowen,* 423 S.W.3d 427, 432–33, (Tex.App.-Houston [14th Dist.] 2013, no pet. h.), citing *Perry Homes*, 258 S.W.3d at 591-92.

Under either the three *Vista/Perry Homes* factors or the totality of the circumstances, it is clear that ProFad has waived its right to arbitrate because it has substantially invoked the judicial process to the detriment and prejudice of WGMA.  Clearly, ProFad's failure to seek arbitration over the last three years while actively and aggressively participating in the litigation of this case is the essence of waiver.

The procedural history of this lawsuit relevant to ProFad that is summarized below shows the extent to which ProFad invoked the judicial process by actively and aggressively participating in this litigation. For example,

- October 4, 2012, Plaintiff filed its original petition and request for disclosures

- November 9, 2012 **ProFad filed a Verified Plea in Abatement, Original Answer and Demand for Jury Trial**

- On January 15, 2013, the Court entered a Docket control Order setting the trial for December 2, 2013

- On July 23, 2013, the **parties filed a Joint Motion to Amend the Scheduling Order**

- On August 1, 2013, the Court entered an Order resetting the trial to September 15, 2014

- On February 18, 2014, **ProFad responded to WGMA's Request for Disclosures**

- On May 6, 2014, **ProFad sent Interrogatories (10) and Requests for Production (23) to WGMA**

- On May 6, 2014, **ProFad sent Requests for Disclosures to WGMA**

- On June 16, 2014, the **parties filed an agreement to mediate the case before Judge Mark Davidson**

- On July 16, 2014, **ProFad filed a Motion for Leave to Designate Responsible Third Party**

- On July 18, 2014 the **parties filed a Joint Motion for Entry of Amended Scheduling Order**

- On July 21, 2014 **ProFad issued a subpoena to Tatum LLC seeking 13 categories of documents related to the merits of the case**

- On July 21, 2014 **ProFad issued a subpoena to Sirius Solutions, LLP seeking 13 categories of documents related to the merits of the case**

- On July 21, 2014 **ProFad issued a subpoena to Ignite Media seeking 10 categories of documents related to the merits of the case**

- On July 25, 2014 the Parties filed an Agreed Motion for Continuance

- On August 11, 2014 **ProFad filed its Designation of Expert Witnesses**

- On August 19, 2014, the Court entered an Amended Scheduling Order setting the trial for January 19, 2015

- On September 8, 2014 **ProFad filed a Traditional and No Evidence Motion for Summary Judgment**

- On September 18, 2014, ProFad filed a response to WGMA's motion to designate additional experts

- On October 13, 2014, **ProFad filed a Motion for Partial Summary Judgment Limiting Liabilities and Dismissing Warranty Claims**

- On November 10, 2014, **ProFad filed a Motion for Leave to file Answer and Counterclaim**

- On November 19, 2014 **ProFad filed a Motion for Continuance and Entry of New Docket Control Order (requesting a fourth trial setting)**

- On November 25, 2014 **ProFad filed its Answer to amended petition and Counterclaim**

- On December 12, 2014, the Court entered an Order resetting the trial to July 6, 2015

- On March 19, 2015**, ProFad sent Requests for Admissions (71), Interrogatories (7) and Requests for Production (15) to WGMA**

- On March 23, 2015 **ProFad filed its Amended Designation of Expert Witnesses**

- On May 21, 2015, **WGMA, pursuant to an agreement with ProFad, took the deposition of Brent Hitterdal, a ProFad employee**

- On April 17, 2015, **WGMA and ProFad filed an Agreed Motion for Entry of Docket Control Order extending the discovery deadlines**

- On April 23, 2015, **ProFad took the deposition of Nathan Wesely, WGMA's President**

- On April 24, 2015, **WGMA, pursuant to an agreement with ProFad, took the deposition of Craig Erickstad, a ProFad employee**

- On April 30, 2015 the Court entered an Order extending the discovery deadlines

- On May 1, 2015, **ProFad filed a Motion to Compel**

- On May 18, 2015 **ProFad filed a second Traditional and No-Evidence Motion for Summary Judgment**

- On May 21, 2015, the Court entered an order granting, in part, ProFad's motion to compel

- On June 1, 2015, **ProFad and WGMA filed a Joint Motion for Continuance**

- On June 16, 2015, the Court entered an Order amending the docket control Order and setting trial for October 19, 2015

- On September 25, 2015, the Court entered Orders denying ProFad's summary judgment motions

- On October 2, 2015, **ProFad filed a Motion for Continuance**

- On October 15, 2015, the Court entered an Order setting the trial for January 18, 2016

- On October 19, 2015, ProFad filed the underlying Motion to Compel

Here, ProFad has filed five dispositive motions on the merits in the form of motions for summary judgment, propounded written discovery on the merits (71 Requests for Admissions, 17 Interrogatories and 38 Requests for Production), produced over 32,000 pages of documents, received over 77,000 pages of documents from WGMA, participated in three depositions by agreement, including deposing WGMA's President Nathan Wesely, attended mediation, moved for continuances, filed a counterclaim seeking a declaratory judgment and attorneys' fees, filed a motion to designate a third party, filed a motion to compel, and on the same day as the fifth trial setting, sought arbitration after the case had been pending for over three years.

On this record and considering the totality of the circumstances in this case, it is clear that ProFad has waived arbitration by substantially invoking the judicial process. An abundance of Texas law is in accord. *See, e.g. Ideal Roofing Inc. v. Armbruster,* No. 05-13-0046-CV, 2013 WL 6063724 (Tex. App.-Dallas Nov. 18, 2013, nopet.) (arbitration waived wherein Ideal L.L.P. filed a dispositive motion on the merits in the form of a motion for summary judgment

and the motion was twice set for hearing, appellants propounded written discovery on the merits, performed inspection of appellees' roof, deposed appellee Nery Armbruster and appellees' expert witness, attended two days of mediation, and sought arbitration after the case had been pending for nineteen and one-half months and only four months before the third trial setting.); *See Adams v. StaxxRing, Inc.,* 344 S.W.3d 641, 648 (Tex.App.-Dallas 2011, pet. denied) (arbitration waived where Adams filed answer, affirmative defense, counterclaims, brought in third parties, engaged in discovery, and filed motions to compel); *In re Christus Spohn Health Sys. Corp.,* 231 S.W.3d 475, 479 (Tex.App.-Corpus Christi 2007, orig. proceeding) (noting actions inconsistent with right to arbitrate include some combination of filing answer and counterclaim, conducting extensive discovery, moving for continuance, and failing to timely request arbitration); *Okorafor v. Uncle Sam & Assocs., Inc.,* 295 S.W.3d 27, 40 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (finding circumstances reflected concerted effort seven months into simple defense strategy of denying sworn account, to escalate process by multiple sworn and affirmative defenses, claims of failures of conditions precedent, and affirmative claims for relief, including declaratory relief, attorney's fees, and sanctions).

**WGMA Has Been Severely Prejudiced by ProFad's Actions Herein**

In addition to showing that ProFad substantially invoked the judicial process, WGMA also has the burden to show prejudice. *See Perry Homes* at 595 ("waiver of arbitration requires a showing of prejudice"). Here, WGMA has been sufficiently prejudiced as a result of ProFad's failure to move to compel arbitration for over three years.

"Prejudice" has many meanings, but in the context of waiver under the FAA it relates to inherent unfairness—that is, a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage:

> [F]or purposes of a waiver of an arbitration agreement[,] prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.

*Perry Homes* at 597*, citing Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 346 (5th Cir.2004).

Thus, "a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *Perry Homes* at 597*, citing In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d 41, 46 n.5 (1st Cir.2005).

As stated by the Texas Supreme Court in *Perry Homes*, prejudice should be easier to show against a party that initially opposed arbitration than against one who sought it from the start:

> While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred. The failure to demand arbitration affects the burden placed upon the party opposing waiver. When a timely demand for arbitration was made, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver. A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims. In contrast, where a party fails to demand arbitration ... and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.

*Perry Homes* at 600 *citing Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 346 (5th Cir.2004). *See also Subway,* 169 F.3d at 327 (referring to "inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue").

Here, ProFad is purposefully and unjustifiably manipulating the exercise of its arbitral rights to gain an unfair tactical advantage over WGMA. ProFad, on the eve of trial and after aggressively litigating this case for over three years, is now seeking to delay disposition by

switching to arbitration when trial was imminent and arbitration is not. Such manipulation by WGMA to its advantage and WGMA's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law. *Perry Homes* at 597. Numerous Texas Courts are in accord. *See, e.g. Oak Partners,* 248 S.W.3d at 851 (concluding that plaintiff showed prejudice when defendant delayed nineteen months before moving to compel arbitration, during which time it actively pursued litigation in the trial court, sought discovery from plaintiff, and actively sought relief from the trial court, which forced plaintiff to respond and to incur attorney's fees); *Jones v. Citibank (South Dakota), N.A.*, 235 S.W.3d 333, 340-41 (Tex.App.-Fort Worth 2007, no pet.) (holding appellant waived her right to arbitrate when she waited for over two years after card issuer's first petition was filed before requesting arbitration, and by that time had filed numerous motions including a motion to dismiss, a counterclaim, and opposition to summary judgment); *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 253 (4th Cir.1987) (finding sufficient prejudice to support waiver where brokerage firm delayed four-and-one-half years before seeking arbitration, two trial dates passed, and opposing party was required to respond to two motions for partial summary judgment and three motions to dismiss); *Miller Brewing Co. v. Fort Worth Distrib. Co.* 781 F.2d 494, 497–98 (5th Cir.1986) (finding waiver where plaintiff unconditionally filed suit, waited eight months to assert right to arbitrate, and did not pursue arbitration until after its suit was dismissed three years later for want of prosecution); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1162 (5th Cir.1986) (prejudice resulted in waiver when the party opposing arbitration had been put to the expense and time of defending a motion to dismiss and for summary judgment because unlike a perfunctory motion to dismiss before answering, a federal rule 12(b) motion to dismiss and for summary judgment "could not have caused anything but substantial prejudice to the Prices."

Additionally, the time and expense in defending an action is another factor to consider in establishing prejudice. *See Frye v. Paine, Webber, Jackson & Curtis, Inc*., 877 F.2d 396, 399 (5th Cir.1989), cert. denied, 494 U.S. 1016 (1990) (prejudice shown by attorney's fees and costs incurred during pretrial proceedings and an aborted trial and by time and expense in defending against cross-claim); *see also Marble Slab Creamery, Inc. v. Wesic, Inc.,* 823 S.W.2d 436, 439 (Tex.App.—Houston [14th Dist.] 1992, no writ) (prejudice shown by expense of attorney's fees and discovery costs in defending suit).

In this case, the record shows that ProFad obtained extensive discovery under one set of rules and now seeks to arbitrate the case under another. In connection with discovery, WGMA was required to electronically produce over 76,000 pages of documents at a cost of $6,046.01. WGMA also spent $3,331.47on depositions. See Rizzo Affidavit attached hereto as **Exhibit A**. Clearly WGMA has been prejudiced. A party who *requests* lots of discovery is not prejudiced by getting it and taking it to arbitration in the same way that a party who *produces* lots of discovery outside the stricter discovery limits in arbitration. *Perry Homes* at 600.

Finally, evidence of compromise to WGMA's legal positions is another factor relevant to determining prejudice. *Adams v. StaxxRing, Inc.,* 344 S.W.3d 641, 652 (Tex.App.-Dallas 2011, pet. denied). Here, regardless of the fees and expenses involved, WGMA was prejudiced in responding to five motions for summary judgment, because ProFad has forced WGMA to marshal its evidence, and even more damaging, marshal the thought processes and legal analysis of WGMA's attorneys on the merits. Clearly, WGMA's legal position has been damaged. *See Ellman v. JC Gen. Contractors,* 419 S.W.3d 516, 520 (Tex.App.–El Paso 2013, no pet.); *Nw.*

*Const. Co., Inc. v. Oak Partners, L.P.*, 248 S.W.3d 837, 850 (Tex.App.-Fort Worth 2008, pet.

denied).

<u>**CONCLUSION**</u>

The record herein is not unlike that described by the Supreme Court in its *Perry Homes*

decision:

> [Movants] got extensive discovery under one set of rules and then sought to arbitrate the case under another. They delayed disposition by switching to arbitration when trial was imminent and arbitration was not. They got the court to order discovery for them and then limited their opponents' rights to appellate review. Such manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law.
>
> *Perry Homes*, 258 S.W.3d at 597.

Similarly, WGMA has been prejudiced by ProFad's strategic attempt to switch to

arbitration and a different set of rules after three years of aggressive litigation in which it obtained

extensive discovery, took full advantage of the rules of procedure, and repeatedly avoided a trial

date.

Because ProFad substantially invoked the juridical process to the detriment and prejudice

of WGMA, ProFad's motion must be denied, as ProFad has waived any arbitration rights it may

have had.

<u>**PRAYER**</u>

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF WEST GULF MARITIME

ASSOCIATION respectfully requests that the Court deny Professional Advantage Software

Solutions, Inc.'s Motion to Compel Arbitration and Stay Proceedings, and award WGMA such

other and further relief to which it may be justly entitled.

Dated: November 5, 2015.

Respectfully submitted,

**CARRIGAN, McCLOSKEY & ROBERSON, L.L.P.**


By:     /s/Blake E. Rizzo
          Timothy M. McCloskey
          SBOT:13417650
          Blake E. Rizzo
          SBOT: 24034073
          945 Heights Boulevard
          Houston, Texas 77008
          713-868-5581
          713-868-1275 (fax)

**ATTORNEYS FOR WEST GULF MARITIME ASSOCIATION**


**<u>CERTIFICATE OF SERVICE</u>**


I certify that a true and correct copy of the above and foregoing has this 5th day of November, 2015, been sent in accordance with Texas Rule of Civil Procedure 21(a) to the following:

Jamey L. Voge
Brian Cooper
STUBER COOPER VOGE, PLLC
2600 Network Blvd., Suite 305
Frisco, Texas  75034
Fax:  (214) 472-2790

*Attorneys for Defendant, Professional Advantage Software Solutions, Inc.*


          /s/Blake E. Rizzo
          Blake E. Rizzo

CAUSE NO. 2012-58827

| WEST GULF MARITIME ASSOCIATION | ' | IN THE DISTRICT COURT |
|---|---|---|
| VS. | ' | |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE, and TECHNOLOGY SUPPORT, INCORPORATED | ' | OF HARRIS COUNTY, T E X A S <br><br> 151ˢᵗ JUDICIAL DISTRICT |

## AFFIDAVIT

Before me the undersigned authority did personally appear Blake E. Rizzo, who made the following affidavit:

"My name is Blake E. Rizzo. I am over the age of eighteen years and I am competent to make this affidavit. I am a partner at the law firm of Carrigan McCloskey & Roberson, L.L.P. ("CMR"). CMR is counsel of record for the Plaintiff in the above captioned proceeding. The contents of this affidavit are true and correct. Attached to this affidavit are documents identified in West Gulf Maritime Association's ("WGMA") Response to Professional Advantage Software Solutions, Inc.'s ("ProFad") Motion to Compel Arbitration and Stay Proceedings (the "Motion").

1. Exhibit 1 contains true and correct copies of invoices for (i) the costs to electronically produce documents in this case and (ii) the depositions taken by WGMA and ProFad. These invoices have been paid by WGMA.

2. Exhibit 2 is a true and correct copy of ProFad's Interrogatories and Request for Production to WGMA.

3. Exhibit 3 is a true and correct copy of a Notice of Intention to Take Deposition by Written Questions to Tatum, LLC issued by ProFad.

4. Exhibit 4 is a true and correct copy of a Notice of Intention to Take Deposition by Written Questions to Sirius Solutions, LLP issued by ProFad.

5. Exhibit 5 is a true and correct copy of a Notice of Intention to Take Deposition by Written Questions to Ignite Media issued by ProFad.

6. Exhibit 6 is a true and correct copy of ProFad's first Traditional and No Evidence Motion for Summary Judgment (minus attachments).

7. Exhibit 7 is a true and correct copy of ProFad's Motion for Partial Summary Judgment Limiting Liabilities and Dismissing Warranty Claims (minus attachments).

# EXHIBIT A

8.   Exhibit 8 is a true and correct copy of ProFad's Answer to Amended Petition and Counterclaim.

9.   Exhibit 9 is a true and correct copy of ProFad's Request for Admissions and Second set of Interrogatories and Request for Production.

10.   Exhibit 10 is a true and correct copy of ProFad's second Traditional and No-Evidence Motion for Summary Judgment (minus attachments).

Further, Affiant Sayeth Not.

_____
BLAKE E. RIZZO


SWORN AND SUBSCRIBED BEFORE ME, this 5th day of November, 2015.

_____
Notary Public, in and for
The State of Texas

SHERYL A. WARREN
MY COMMISSION EXPIRES
MAY 30, 2019

2

# Paradigm-ES, LLC

3605 Katy Freeway # 200
Houston, TX 77007



PARADIGM
Electronic Solutions

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/17/2014 | 2403 |
| Tax ID | |
| 27-0160117 | |

**Bill To**

Carrigan, McCloskey & Roberson
945 Heights Blvd
Houston, TX 77008

| Terms | Requested By | Project # | Client Matter # |
|-------|--------------|-----------|-----------------|
| Due on receipt | Blake Rizzo | CMR1470 | WGMA |

| Quantity | Unit | Description | Rate | Amount |
|----------|------|-------------|------|--------|
| 41,283 | pages | Convert to TIF | 0.05 | 2,064.15T |
| 41,283 | pages | OCR | 0.02 | 825.66T |
| 41,283 | pages | Branding - WGMA0000001-WGMA0041283 | 0.01 | 412.83T |
| 4 | | USB Flashdrives - 8 gb | 20.00 | 80.00T |
| | | Sales Tax | 0.00% | 0.00 |

Thank you for your business.

| **Total** | |
|-----------|--|
| | $3,382.64 |

| Phone # | Fax # |
|---------|-------|
| 832-668-5242 | 832-201-8487 |

| Web Site |
|----------|
| www.paradigm-es.com |

EXHIBIT 1

# *Paradigm-ES, LLC*

3605 Katy Freeway # 200
Houston, TX 77007



**PARADIGM**
Electronic Solutions

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/16/2014 | 2502 |
| | **Tax ID** |
| | 27-0160117 |

| Bill To |
|---------|
| Carrigan, McCloskey & Roberson<br>945 Heights Blvd<br>Houston, TX 77008 |

| Terms | Requested By | Project # | Client Matter # |
|-------|--------------|-----------|-----------------|
| Due on receipt | Blake Rizzo | CMR1470_02 | WGMA Interdyne BMI |

| Quantity | Unit | Description | Rate | Amount |
|----------|------|-------------|------|--------|
| 0.5 | gigs | Native File Procesing - Inventory<br>MetaData and File Extraction<br>Native Numbering for Database Review | 250.00 | 125.00T |
| 35,191 | pages | Convert to TIF - Convert Documents to TIF, OCR, and brand.<br>WGMA0041284 - WGMA0076474 | 0.07 | 2,463.37T |
| 3 | flashdrives | Hardware - USB Drives for delivery<br>Sales Tax | 25.00<br>0.00% | 75.00T<br>0.00 |

We appreciate your prompt payment.

**Total**      $2,663.37

| Phone # | Fax # |
|---------|-------|
| 832-668-5242 | 832-201-8487 |

| Web Site |
|----------|
| www.paradigm-es.com |

# INVOICE



**cRc National**

Court Reporters Clearinghouse - NATIONAL
713-620-2020

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 114114 | 6/1/2015 | 104017 |

| Job Date | Case No. |
|---|---|
| 5/21/2015 | 2012-58827 |

| Case Name |
|---|
| West Gulf Maritime Association vs. Business Microvar, Inc., et al. 2142 |

| Payment Terms |
|---|
| Due upon receipt |

Timothy M. McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX  77008

---

ORIGINAL & CERTIFIED COPY OF:

    Brent Hitterdal                                                    845.05

    (TAXABLE $845.05)

|  | |
|---|---|
| **TOTAL DUE >>>** | **$845.05** |
| AFTER 7/1/2015  PAY | ~~$946.46~~ |

Invoice prepared for:
SUSAN L. GRAHAM, CSR

Payment is NOT contingent upon client reimbursement.

Please visit our website at www.crcnational.com/payment for fast, safe and secure online invoice payment.
Even if you don't have a PayPal account - just click on "Don't have a PayPal account."

 ENTERED

---

**Tax ID:** 76-0537648                                           Phone: 713-868-5581   Fax:713-868-1275

*Please detach bottom portion and return with payment.*

---

Timothy M. McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX  77008

| | | |
|---|---|---|
| Invoice No. | : | 114114 |
| Invoice Date | : | 6/1/2015 |
| **Total Due** | : | **$845.05** |
| AFTER 7/1/2015 PAY $946.46 | | |

| | | |
|---|---|---|
| Job No. | : | 104017 |
| BU ID | : | HOUSTON |
| Case No. | : | 2012-58827 |
| Case Name | : | West Gulf Maritime Association vs. Business Microvar, Inc., et al. |

Remit To:    **Court Reporters Clearinghouse, Inc.**
                    **1225 North Loop West, Suite 327**
                    **Houston, TX  77008**



**cRc National**

Court Reporters Clearinghouse - *NATIONAL*
713 626 2629

# INVOICE

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 113836 | 5/14/2015 | 102950 |
| **Job Date** | **Case No.** | |
| 4/24/2015 | 2012-58827 | |
| **Case Name** | | |

West Gulf Maritime Association vs. Business Microvar, Inc., et al.

| **Payment Terms** | | |
|---|---|---|
| Due upon receipt | | |

Blake E. Rizzo
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX 77008

Friendly reminder. Thank you.

ORIGINAL & CERTIFIED COPY OF:
   Craig Erickstad                           1,232.85
   (TAXABLE $1,232.85)

TOTAL DUE >>>      **$1,232.85**
AFTER 6/13/2015  PAY   ~~$1,380.79~~

Invoice prepared for:
SUSAN L. GRAHAM, CSR

Payment is NOT contingent upon client reimbursement.

Please visit our website at www.crcnational.com/payment for fast, safe and secure online invoice payment.
Even if you don't have a PayPal account - just click on "Don't have a PayPal account."

(-) Payments/Credits:      0.00
(+) Finance Charges/Debits:   147.94
(=) New Balance:      $1,380.79



ENTERED

**Tax ID:** 76-0537648

Phone: 713-868-5581   Fax:713-868-1275

*Please detach bottom portion and return with payment.*

Blake E. Rizzo
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX 77008

| Invoice No. | : | 113836 |
|---|---|---|
| Invoice Date | : | 5/14/2015 |
| **Total Due** | **:** | **$ 1,380.79** |

Remit To: **Court Reporters Clearinghouse, Inc.**
           **1225 North Loop West, Suite 327**
           **Houston, TX 77008**

| Job No. | : | 102950 |
|---|---|---|
| BU ID | : | HOUSTON |
| Case No. | : | 2012-58827 |
| Case Name | : | West Gulf Maritime Association vs. Business Microvar, Inc., et al. |

# INVOICE



**cRc National**

Court Reporters Clearinghouse
713 626 2629

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 114014 | 5/30/2015 | 104018 |
| **Job Date** | **Case No.** | |
| 5/21/2015 | 2012-58827 | |
| **Case Name** | | |

West Gulf Maritime Association vs. Business Microvar, Inc.,
et al.  a 14₂

| **Payment Terms** | | |
|---|---|---|

Due upon receipt

Timothy M. McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX 77008

| VIDEOTAPING OF: | | 680.25 |
|---|---|---|
| Brent Hitterdal | | |
| | **TOTAL DUE >>>** | **$680.25** |
| | AFTER 6/29/2015 PAY | $761.88 |

Invoice prepared for:
SUSAN L. GRAHAM, CSR

Payment is NOT contingent upon client reimbursement.

Please visit our website at www.crcnational.com/payment for fast, safe and secure online invoice payment.
Even if you don't have a PayPal account - just click on "Don't have a PayPal account."

| (-) Payments/Credits: | 0.00 |
|---|---|
| (+) Finance Charges/Debits: | 81.63 |
| (=) New Balance: | $761.88 |

POSTED

Phone: 713-868-5581   Fax:713-868-1275

**Tax ID:** 76-0537648

*Please detach bottom portion and return with payment.*

Timothy M. McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Boulevard
Houston, TX 77008

| Invoice No. | : | 114014 |
|---|---|---|
| Invoice Date | : | 5/30/2015 |
| **Total Due** | : | **$761.88** |

| Job No. | : | 104018 |
|---|---|---|
| BU ID | : | HOUSTO VID |
| Case No. | : | 2012-58827 |
| Case Name | : | West Gulf Maritime Association vs. Business Microvar, Inc., et al. |

Remit To:    **Court Reporters Clearinghouse, Inc.**
**1225 North Loop West, Suite 327**
**Houston, TX 77008**

# INVOICE

Liberty Litigation Support LLC
7171 Highway 6 North, Suite 250
Houston, TX 77095
Phone:(832) 427-5460   Fax:(713) 533-8997

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 14625 | 5/15/2015 | 8034 |

| Job Date | Case No. |
|---|---|
| 4/23/2015 | 2012-58827 |

| Case Name |
|---|
| West Gulf Maritime Association, Inc. v. Business Microvar, Inc., et al   ᒦ 142 |

| Payment Terms |
|---|
| Net 30 |

Timothy McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Blvd.
Houston, TX  77008

1 CERTIFIED COPY OF TRANSCRIPT OF:
   Nathan Wesely

573.32

**TOTAL DUE >>>**          **$573.32**

**Tax ID:** 45-3956575

*Please detach bottom portion and return with payment.*

Timothy McCloskey
Carrigan, McCloskey & Roberson, LLP
945 Heights Blvd.
Houston, TX  77008

| | | |
|---|---|---|
| Invoice No. | : | 14625 |
| Invoice Date | : | 5/15/2015 |
| **Total Due** | : | **$ 573.32** |



Remit To: **Liberty Litigation Support LLC**
          **7171 Highway 6 North, Suite 250**
          **Houston, TX  77095**

| | | |
|---|---|---|
| Job No. | : | 8034 |
| BU ID | : | HOU-DEP |
| Case No. | : | 2012-58827 |
| Case Name | : | West Gulf Maritime Association, Inc. v. Business Microvar, Inc., et al |

received
5-X8-X5   ᗷL

R&R
CAL

CAUSE NO. 2012-58827

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | § § § | IN THE DISTRICT COURT OF |
| VS. | § § | HARRIS COUNTY, TEXAS |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | § § § § § | 151ST JUDICIAL DISTRICT |

### PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF

TO:    Plaintiff, West Gulf Maritime Association, Inc., by and through its attorneys of record, Timothy M. McCloskey and Blake E. Rizzo, Carrigan, McCloskey, and Roberson LLP, 945 Heights Blvd., Houston, Texas 77008

Defendant Professional Advantage and Technology Support, Inc. ("Profad") serves these

First Set of Interrogatories and Requests for Production upon Plaintiff, West Gulf Maritime

Association, Inc. ("WGMA") as allowed by the Texas Rules of Civil Procedure.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
     Katherine L. Sunstrom
     Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX 77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
*Attorneys for Defendant*
*Professional Advantage Software Solutions, Inc.*

# EXHIBIT 2

539313.1 DISC 0002573 8786 KLS

## CERTIFICATE OF SERVICE

On this 6th day of May, 2014, a true and correct copy of the foregoing instrument has been provided to all parties by United States mail, courier service, or telefax transmission.

Timothy M. McCloskey
Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

Stephanie Laird Tolson
McGLINCHEY STAFFORD
1001 McKinney, Suite 1500
Houston, Texas 77002

Scott D. Marrs
Andrew B. McGill
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

_____
Katherine Sunstrom

## Definitions

1.  "Identify" means to provide the complete name, address, telephone number of a person or to provide the complete description, title, date, location and form of a document or other tangible evidence.

2.  "Document" means any written, recorded or graphic matter however produced or reproduced including, but not limited to, correspondence, letters, memoranda, telegrams, receipts, union paperwork, memoranda, minutes of any meetings, reports, notes, schedules, tabulations, productions, checks, statements, returns, receipts, purchase orders, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, itineraries, passports, visas, trial balances, telegrams, mailgrams, contracts, bills, agreements, offers, notations of any sort of conversation, analyses, video tapes, audio recordings, calendars, tape recordings, bulletins, printed matter, galley sheets, computer disks, computer diskettes, computer tapes, computer printouts, teletypes, telecopies, photographs, deeds, mortgages, manuscripts, electronic mail (Email or email), telephone logs, telephone records and all other writings and records, whether or not claimed to be privileged, in your possession, custody or control, or in the possession, custody or control of your present or former counsel, agents, representatives, brokers, assigns, successors and employees and all persons acting on their behalf. "Document" includes the original and all drafts, as well as all copies which differ in any respect from the original.

3.  "BMI" shall include Business Microvar, Inc. d/b/a Interdyn BMI.

4.  "Professional Advantage" shall include Professional Advantage Software Solutions, Inc.

5.  "Technology Support" shall include Technology Support, Inc.

6.  "Defendants" shall include BMI, Professional Advantage, and Technology Support.

7.  "WGMA" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

8.  "Plaintiff" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

9.  "You" and "your" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

10. "System" means the financial accounting, reporting, payroll processing, and related applications as defined in Plaintiff's Original Petition.

539313.1 DISC 0002573 8786 KLS

11.    Any undefined terms shall have the meaning provided them in the normal course of the English language used in the United States and as defined by any dictionary of the English language available in the United States (e.g. Webster's New World Dictionary).

## INTERROGATORIES

1.    Describe in detail each problem or issue with the System that you contend is the fault of Professional Advantage, the alleged actions or inactions of Professional Advantage that you claim caused each problem or issue, and what actions Professional Advantage should have taken to avoid the problem or issue or to mitigate the damages allegedly resulting from each problem or issue.

**ANSWER:**

2.    If you contend that Professional Advantage has violated any of the Texas Deceptive Trade Practices Act Sections 17.46(b)(5), (7), (12), (24), and breach of express and implied warranties, state the factual basis for your contention.

**ANSWER:**

3.    If you contend that Professional Advantage has breached a contract with you, state the factual basis for your contention.

**ANSWER:**

4.    If you contend that Professional Advantage has engaged in negligent misrepresentation in conducting business with and/or providing services to you, state the factual basis for your contention.

**ANSWER:**

5.    If you contend that Professional Advantage has engaged in negligence and gross negligence in conducting business with and/or providing services to you, state the factual basis for your contention.

**ANSWER:**

6.    If you contend Professional Advantage breached any express or implied warranties, state the factual basis for your contention.

**ANSWER:**

7.    Identify each and every category of damages you intend to claim against Professional Advantage in this lawsuit and describe in detail the basis for each item of damages.

**ANSWER:**

8.    Describe all bases for your contention that Professional Advantage "grossly misrepresented the capabilities of their PAM application, failed to define the limits of their PAM application and was unable to meet Plaintiff's requirements for a fully operational system."

**ANSWER:**

9.    If any investigation was performed by you or on your behalf regarding the services provided by Professional Advantage, identify the date the investigation occurred, the person or entity that performed the investigation, the reason for the investigation, and the results of the investigation.

**ANSWER:**

10.   If you have hired any person or entity to perform work to complete or repair the alleged defects in the system and/or services provided by Professional Advantage, identify the entity who performed the work, the cost of the work, and what was performed to complete or repair the alleged defects.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1.    Any and all correspondence between Professional Advantage and Plaintiff relating to the negotiation of any agreement and any related agreement, statement of work or change order.

**RESPONSE:**

2.    Any and all correspondence between Professional Advantage and Plaintiff relating to the System.

**RESPONSE:**

3. All internal communications and documents relating to the negotiation of any agreement and any related agreement, statement of work or change order.

   **RESPONSE:**

4. All internal communications and documents relating to the System.

   **RESPONSE:**

5. Any and all correspondence between Professional Advantage and Plaintiff relating to problems with the System.

   **RESPONSE:**

6. All internal communications and documents relating to problems with the System.

   **RESPONSE:**

7. All invoices, purchase orders and payment documents between Professional Advantage and Plaintiff.

   **RESPONSE:**

8. Any and all correspondence between Plaintiff and BMI related to Professional Advantage.

   **RESPONSE:**

9. Any and all correspondence between Plaintiff and Technology Support related to Professional Advantage.

   **RESPONSE:**

10. All documents relating to or reflecting each problem with the System you attribute to Professional Advantage.

    **RESPONSE:**

539313.1 DISC 0002573 8786 KLS

11.    Any and all correspondence between Plaintiff and BMI relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

12.    Any and all correspondence between Plaintiff and Technology Support relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

13.    Any and all correspondence between Plaintiff and any third-party relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

14.    Any and all correspondence between Plaintiff and Technology Support relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

15.    Any and all correspondence between Plaintiff and Ignite relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

16.    Any and all correspondence between Plaintiff and Tribridge relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

17.    Any and all correspondence between Plaintiff and Xavier Chasseuil relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

18.    Any and all correspondence between Plaintiff and Dave Keseian relating to or reflecting problems with the System you attribute to Professional Advantage.

**RESPONSE:**

19.   All documents reflecting or evidencing the alleged actions and/or inactions of Professional Advantage that you claim cause each problem or issue with the System.

**RESPONSE:**

20.   All contracts or agreements between Plaintiff and Professional Advantage including statements of work, amendments, addendums, or change orders.

**RESPONSE:**

21.   All documents reflecting or evidencing the total amount of damages you are claiming from Professional Advantage, and providing the calculation and support for such amount.

**RESPONSE:**

22.   All documents reflecting or evidencing each category of damages you are claiming from Professional Advantage, and providing the calculation and support for each such category.

**RESPONSE:**

23.   All expert reports or opinions and related documents concerning your claims against Professional Advantage pursuant to Tex.R.Civ.P. 192.3(e).

**RESPONSE:**

No. 2012-58827

| WEST GULF MARITIME ASSOCIATION, INC. | : | IN THE DISTRICT COURT OF |
|---|---|---|
| vs. | : | |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | : | HARRIS COUNTY, TEXAS |
| | : | 151ST JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: **Timothy McCloskey**
To other party/parties by and through their attorney(s) of record: **Scott D. Marrs (BEIRNE MAYNARD & PARSONS, LLP) and Stephanie Laird Tolson (MCGLINCHEY STAFFORD, PLLC)**

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

**TATUM, LLC (Please Refer To Exhibit "A")**
10111 Richmond Avenue, Suite 100, Houston, Texas 77042
c/o Corporation Service Company
211 7th Street, Suite 620
Austin, TX 78701

before a Notary Public for **SUNBELT REPORTING / DEPO TEXAS**
**(Records Dept) 13101 NW Freeway, Suite 210**
**Houston, TX 77040**
**713-667-0763   Fax 713-661-4785**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

**PLEASE REFER TO ATTACHED EXHIBIT "A"**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Katherine L. Sunstrom
LORANCE & THOMPSON, PC
2900 North Loop West, Suite 500
Houston, TX 77092
713-868-5560   Fax 713-864-4671
Attorney for Defendant
SBA # 24037538

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated:  July 21, 2014

by _Katherine L. Sunstrom /tc_

Unofficial Copy Office of Chris Daniel District Clerk

## EXHIBIT 3

Order No.  15304

## EXHIBIT A

## Definitions

1.     "Identify" means to provide the complete name, address, telephone number of a person or to provide the complete description, title, date, location and form of a document or other tangible evidence.

2.     "Document" means any written, recorded or graphic matter however produced or reproduced including, but not limited to, correspondence, letters, memoranda, telegrams, receipts, union paperwork, memoranda, minutes of any meetings, reports, notes, schedules, tabulations, productions, checks, statements, returns, receipts, purchase orders, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, itineraries, passports, visas, trial balances, telegrams, mailgrams, contracts, bills, agreements, offers, notations of any sort of conversation, analyses, video tapes, audio recordings, calendars, tape recordings, bulletins, printed matter, galley sheets, computer disks, computer diskettes, computer tapes, computer printouts, teletypes, telecopies, photographs, deeds, mortgages, manuscripts, electronic mail (Email or email), telephone logs, telephone records and all other writings and records, whether or not claimed to be privileged, in your possession, custody or control, or in the possession, custody or control of your present or former counsel, agents, representatives, brokers, assigns, successors and employees and all persons acting on their behalf. "Document" includes the original and all drafts, as well as all copies which differ in any respect from the original.

3.     "BMI" shall include Business Microvar, Inc. d/b/a Interdyn BMI.

4.     "Professional Advantage" shall include Professional Advantage Software Solutions, Inc.

5.     "Technology Support" shall include Technology Support, Inc.

6.     "Defendants" shall include BMI, Professional Advantage, and Technology Support.

7.     "WGMA" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

8.     "Plaintiff" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

9.     "Tatum" shall include Tatum LLC, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Tatum LLC, and/or companies or organizations associated with Tatum LLC.

Tatum LLC Subpoena

10. "You" and "your" shall include shall include Tatum LLC, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Tatum LLC, and/or companies or organizations associated with Tatum LLC.

11. "System" means the financial accounting, reporting, payroll processing, and related applications over which Tatum LLC and Derek Hall were hired to act as Project Manager and involving the parties in the caption of the instant matter.

12. Any undefined terms shall have the meaning provided them in the normal course of the English language used in the United States and as defined by any dictionary of the English language available in the United States (e.g. Webster's New World Dictionary).

## DOCUMENTS TO BE PRODUCED

1. Any and all correspondence between Professional Advantage and Tatum relating to the negotiation of any agreement and any related agreement, statement of work or change order.

2. Any and all correspondence between Professional Advantage and Tatum relating to the System.

3. Any and all correspondence between WGMA and Tatum relating to the negotiation of any agreement and any related agreement, statement of work or change order.

4. Any and all correspondence between WGMA and Tatum relating to the System or to this lawsuit.

5. All internal communications and documents relating to the negotiation of any agreement and any related agreement, statement of work or change order related to the System.

6. All internal communications and documents relating to the System.

7. Any and all correspondence between and among WGMA, Tatum, Technology Support, and Professional Advantage relating to problems with the System.

8. All internal communications and documents relating to problems with the System.

9. All invoices, purchase orders and payment documents between Tatum and WGMA.

10. Any and all correspondence between Tatum and any other party related to Professional Advantage.

11. All documents, communications and invoices concerning the implementation of the PIA system allegedly developed by IgniteMedia for WGMA.

Unofficial Copy Office of Chris Daniel District Clerk

Tatum LLC Subpoena

12. All documents and communications relating to or reflecting each problem with the System you attribute to Professional Advantage.

13. All documents regarding, reflecting or evidencing any opinion, expert or otherwise, you may be offering in the above captioned litigation.

Unofficial Copy Office of Chris Daniel District Clerk

7/21/2014 3:17:07 PM
Chris Daniel - District Clerk Harris County
Envelope No. 1892670
By: AMANDA ARRIAGA

No. 2012-58827

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | : | IN THE DISTRICT COURT OF |
| vs. | : | |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | : | HARRIS COUNTY, TEXAS |
| | : | 151ST JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: **Timothy McCloskey**
To other party/parties by and through their attorney(s) of record: **Scott D. Marrs (BEIRNE MAYNARD & PARSONS, LLP) and Stephanie Laird Tolson (MCGLINCHEY STAFFORD, PLLC)**

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

**SIRIUS SOLUTIONS, LLP (Please Refer To Exhibit "A")**
**1223 West Loop South, Suite 1800**
**Houston, TX 77027**

before a Notary Public for　　**SUNBELT REPORTING / DEPO TEXAS**
**(Records Dept) 13101 NW Freeway, Suite 210**
**Houston, TX 77040**
**713-667-0763　Fax 713-661-4785**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

**PLEASE REFER TO ATTACHED EXHIBIT "A"**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Katherine L. Sunstrom
LORANCE & THOMPSON, PC
2900 North Loop West, Suite 500
Houston, TX 77092
713-868-5560　Fax 713-864-4671
Attorney for Defendant
SBA # 24037538

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: July 21, 2014

by _Katherine L. Sunstrom /tc_

## EXHIBIT 4

Order No. 15304

# EXHIBIT A

## Definitions

1.  "Identify" means to provide the complete name, address, telephone number of a person or to provide the complete description, title, date, location and form of a document or other tangible evidence.

2.  "Document" means any written, recorded or graphic matter however produced or reproduced including, but not limited to, correspondence, letters, memoranda, telegrams, receipts, union paperwork, memoranda, minutes of any meetings, reports, notes, schedules, tabulations, productions, checks, statements, returns, receipts, purchase orders, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, itineraries, passports, visas, trial balances, telegrams, mailgrams, contracts, bills, agreements, offers, notations of any sort of conversation, analyses, video tapes, audio recordings, calendars, tape recordings, bulletins, printed matter, galley sheets, computer disks, computer diskettes, computer tapes, computer printouts, teletypes, telecopies, photographs, deeds, mortgages, manuscripts, electronic mail (Email or email), telephone logs, telephone records and all other writings and records, whether or not claimed to be privileged, in your possession, custody or control, or in the possession, custody or control of your present or former counsel, agents, representatives, brokers, assigns, successors and employees and all persons acting on their behalf. "Document" includes the original and all drafts, as well as all copies which differ in any respect from the original.

3.  "BMI" shall include Business Microvar, Inc. d/b/a Interdyn BMI.

4.  "Professional Advantage" shall include Professional Advantage Software Solutions, Inc.

5.  "Technology Support" shall include Technology Support, Inc.

6.  "Defendants" shall include BMI, Professional Advantage, and Technology Support.

7.  "WGMA" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

8.  "Plaintiff" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

9.  "Sirius" shall include Sirius Solutions, LLP, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Sirius Solutions, LLP, and/or companies or organizations associated with Sirius Solutions, LLP.

Unofficial Copy Office of the District Clerk

10. "You" and "your" shall include shall include Sirius Solutions, LLP, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Sirius Solutions, LLP, and/or companies or organizations associated with Sirius Solutions, LLP.

11. "System" means the financial accounting, reporting, payroll processing, and related applications over which Sirius Solutions, LLP and Derek Hall were hired to act as Project Manager and involving the parties in the caption of the instant matter.

12. Any undefined terms shall have the meaning provided them in the normal course of the English language used in the United States and as defined by any dictionary of the English language available in the United States (e.g. Webster's New World Dictionary).

## DOCUMENTS TO BE PRODUCED

1. Any and all correspondence between Professional Advantage and Sirius relating to the negotiation of any agreement and any related agreement, statement of work or change order.

2. Any and all correspondence between Professional Advantage and Sirius relating to the System.

3. Any and all correspondence between WGMA and Sirius relating to the negotiation of any agreement and any related agreement, statement of work or change order.

4. Any and all correspondence between WGMA and Sirius relating to the System or to this lawsuit.

5. All internal communications and documents relating to the negotiation of any agreement and any related agreement, statement of work or change order related to the System.

6. All internal communications and documents relating to the System.

7. Any and all correspondence between and among WGMA, Sirius, Technology Support, and Professional Advantage relating to problems with the System.

8. All internal communications and documents relating to problems with the System.

9. All invoices, purchase orders and payment documents between Sirius and WGMA.

10. Any and all correspondence between Sirius and any other party related to Professional Advantage.

11. All documents, communications and invoices concerning the implementation of the PIA system allegedly developed by IgniteMedia for WGMA.

Sirius Solutions, LLP Subpoena

12. All documents and communications relating to or reflecting each problem with the System you attribute to Professional Advantage.

13. All documents regarding, reflecting or evidencing any opinion, expert or otherwise, you may be offering in the above captioned litigation.

Unofficial Copy Office of Chris Daniel District Clerk

No. 2012-58827

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | : | IN THE DISTRICT COURT OF |
| vs. | : | |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | : : : | HARRIS COUNTY, TEXAS |
| | : | 151ST JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: **Timothy McCloskey**
To other party/parties by and through their attorney(s) of record: **Scott D. Marrs (BEIRNE MAYNARD & PARSONS, LLP) and Stephanie Laird Tolson (MCGLINCHEY STAFFORD, PLLC)**

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

**IGNITEMEDIA, LLC (Please Refer To Exhibit "A")**
**800 Town & Country Blvd., Suite 300**
**Houston, TX 77024**

before a Notary Public for      **SUNBELT REPORTING / DEPO TEXAS**
**(Records Dept) 13101 NW Freeway, Suite 210**
**Houston, TX 77040**
**713-667-0763    Fax 713-661-4785**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

**PLEASE REFER TO ATTACHED EXHIBIT "A"**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Katherine L. Sunstrom
**LORANCE & THOMPSON, PC**
**2900 North Loop West, Suite 500**
**Houston, TX 77092**
**713-868-5560    Fax 713-864-4671**
Attorney for Defendant
SBA # 24037538

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: July 21, 2014

by *Katherine L. Sunstrom /tc*

## EXHIBIT 5

Unofficial Copy Office of Chris Daniel District Clerk

Order No. 15304

## EXHIBIT A

## Definitions

1. "Identify" means to provide the complete name, address, telephone number of a person or to provide the complete description, title, date, location and form of a document or other tangible evidence.

2. "Document" means any written, recorded or graphic matter however produced or reproduced including, but not limited to, correspondence, letters, memoranda, telegrams, receipts, union paperwork, memoranda, minutes of any meetings, reports, notes, schedules, tabulations, productions, checks, statements, returns, receipts, purchase orders, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, itineraries, passports, visas, trial balances, telegrams, mailgrams, contracts, bills, agreements, offers, notations of any sort of conversation, analyses, video tapes, audio recordings, calendars, tape recordings, bulletins, printed matter, galley sheets, computer disks, computer diskettes, computer tapes, computer printouts, teletypes, telecopies, photographs, deeds, mortgages, manuscripts, electronic mail (Email or email), telephone logs, telephone records and all other writings and records, whether or not claimed to be privileged, in your possession, custody or control, or in the possession, custody or control of your present or former counsel, agents, representatives, brokers, assigns, successors and employees and all persons acting on their behalf. "Document" includes the original and all drafts, as well as all copies which differ in any respect from the original.

3. "BMI" shall include Business Microvar, Inc. d/b/a Interdyn BMI.

4. "Professional Advantage" shall include Professional Advantage Software Solutions, Inc.

5. "Technology Support" shall include Technology Support, Inc.

6. "Defendants" shall include BMI, Professional Advantage, and Technology Support.

7. "WGMA" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

8. "Plaintiff" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

9. "Sirius" shall include Sirius Solutions, LLP, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Sirius Solutions, LLP, and/or companies or organizations associated with Sirius Solutions, LLP.

Unofficial Copy Office of Daniel District Clerk

10. "Ignite" shall include IgniteMedia, LLC, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of IgniteMedia, LLC, and/or companies or organizations associated with IgniteMedia, LLC.

11. "You" and "your" shall include shall include IgniteMedia, LLC, and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of IgniteMedia, LLC, and/or companies or organizations associated with IgniteMedia, LLC.

12. "System" means the financial accounting, reporting, payroll processing, and related applications regarding which you have been hired to provide services and involving the parties in the caption of the instant matter.

13. Any undefined terms shall have the meaning provided them in the normal course of the English language used in the United States and as defined by any dictionary of the English language available in the United States (e.g. Webster's New World Dictionary).

## DOCUMENTS TO BE PRODUCED

1. Any and all correspondence between WGMA and Ignite relating to the negotiation of any agreement and any related agreement, statement of work or change order.

2. Any and all correspondence between WGMA and Ignite relating to the System or to this lawsuit.

3. All internal communications and documents relating to the negotiation of any agreement and any related agreement, statement of work or change order related to the System.

4. All internal communications and documents relating to the System.

5. All internal communications and documents relating to problems with the System.

6. All invoices, purchase orders and payment documents between Ignite and WGMA.

7. Any and all correspondence between Ignite and any other party related to Professional Advantage.

8. All documents and communications relating to or reflecting each problem with the System you attribute to Professional Advantage.

9. All documents, communications and invoices concerning the implementation of the PIA system allegedly developed by IgniteMedia for WGMA.

10. All documents regarding, reflecting or evidencing any opinion, expert or otherwise, you may be offering in the above captioned litigation.

CAUSE NO. 2012-58827      R&R
         CAL

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | HARRIS COUNTY, TEXAS |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | § § § § | 151ST JUDICIAL DISTRICT |

**PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Professional Advantage Software Solutions, Inc. ("ProFad"), Defendant in the above-captioned and numbered cause, and files this Traditional and No-Evidence Motion for Summary Judgment as to all of Plaintiff West Gulf Maritime Association, Inc.'s ("WGMA") claims and in support hereof would respectfully show the Court the following:

## I. SUMMARY OF THE ARGUMENT

1. ProFad's motion is brought on the following grounds:

- WGMA's tort causes of action are negated by the economic loss rule.

- WGMA's DTPA claim is negated by Tex. Bus. & Comm. Code § 7.49 (g).

- WGMA's breach of contract claims are barred based on the terms of ProFad's limited warranty.

- WGMA has no evidence to support one or more of its claims against ProFad and they must be dismissed.

## II. BACKGROUND FACTS

2. This case involves a project wherein Plaintiff West Gulf Maritime Association, Inc. ("WGMA"), hired via separate agreements, Technology Support, Inc., Business Microvar, Inc. and Professional Advantage for a project related to WGMA's payroll, HR and accounting

555262.1 PLD 0002573 8786 KLS

# EXHIBIT 6

systems. According to WGMA's Original Petition and the discovery to date in this matter, WGMA and Defendant Business Microvar, Inc. d/b/a Interdyn BMI ("BMI") entered into an agreement ("the October 4 Agreement") on October 4, 2010, regarding the implementation of Microsoft Dynamics Great Plains ("Dynamics GP") financial accounting system and Personnel Agency Management ("PAM"). ProFad was later hired to customize and deliver the code for the PAM system.

3.      ProFad was not a signatory or a party to the October 4 Agreement. See Exhibit A to Plaintiff's Original Petition, attached hereto as Exhibit 1. Later WGMA and BMI signed a Statement of Work ("SOW") concerning the implementation of Dynamics GP. On November 5, 2010, WGMA signed several project documents with ProFad including but not limited to a Statement of Work and a Functional Design Specification which included the specification for the Overtime Calculations. *See* excerpts from the ProFad SOW and FDS attached hereto as Exhibit 2. This specification and its requirements were provided to ProFad by WGMA. ProFad never had access to WGMA's old system. Any specifications and requirements were determined solely by WGMA and communicated to ProFad for inclusion in the FDS. Each agreement signed between WGMA and ProFad included the following limited warranty:

> Customizations, modifications and features are subject to a 30-day warranty period commencing from the date of delivery. During this period, any issues/programming errors will be modified free of charge. The Professional Advantage software warranty is subject to our client having completed user acceptation testing. Failure to complete UAT can result in the voiding of the warranty period. Any issues identified after the warranty period will be subject to standard consulting fees.
>
> Professional Advantage makes every effort to reduce the possibility of software issues and conduct extensive testing prior to delivery. It is the responsibility of the client to conduct thorough acceptance testing during the warranty period to ensure satisfaction with the delivered software.
>
> *See* Exhibit 2 at PA0025231.

4.     The Overtime Calculation was implemented in PAM in compliance with the FDS. Code was developed and delivered to WGMA for testing. The system went live on January 3, 2012. See Derek Hall email attached hereto as Exhibit 3.

5.     For the first time in April 2012, WGMA informed PAM that there was a mismatch between the AS400 OT calculation and the PAM OT calculation. This was discussed during the weekly project meeting on April 17, 2012, and ProFad requested examples of the mismatch from WGMA. By May 1, 2012, ProFad determined that AS400 did not include all timesheets in the OT pay calculation. It was determined that in the cases where the AS400 OT did not match Professional Advantages OT pay calculation there were Adjusted Timesheets that were not included in the AS400 OT calculation. In the cases where the PAM OT pay calculation and the AS400 OT pay calculation matched the Adjusted Timesheets were included in the AS400 OT calculation. ProFad requested from WGMA information regarding how AS400 included some but not all Adjusted Timesheets in the OT calculation so that it could include this previously undisclosed requirement into the PAM system. ProFad repeatedly requested this information through and including December 2012 but received no response. *See* Exhibit 4, chain of emails from May 2012 through December 2012 requesting information on the OT issue. Further, this issue remained on the weekly project meeting agenda produced by Derek Hall of Sirius Solutions, Inc., the project manager hired by WGMA to oversee this project, as unresolved and under review by WGMA for a consecutive 21 weeks. In November 2012, the issue was closed and dropped from the agenda and this lawsuit was filed. See Exhibit 5, November 12, 2012 email from Derek Hall with excerpts from attached document titled "WGMA Payroll Key Issues Status Report 11-12-2012 v56.xlsx."

6. WGMA failed to fulfill its obligation to perform User Acceptance Testing within 30 days of delivery of the code by ProFad. Further, WGMA failed to fulfill its obligation under the Statement of Work to provide complete requirements and specifications. For whatever reason, WGMA chose not to provide information to ProFad which would have allowed it to address the OT pay calculation mismatch. Instead WGMA filed suit and has allegedly hired another contractor to implement a fix. On this basis alone, WGMA cannot prove any of its claims and they should be dismissed in their entirety.

7. WGMA alleges that Defendants, including Professional Advantage, guaranteed specific attributes of the finished system which were allegedly not carried out including but not limited to an alleged failure by ProFad to deliver a system with correct overtime calculations. Based on these allegations, WGMA has sued ProFad. ProFad denies all liability.

8. WGMA claims that the project that is the subject of this suit was valued at $600,000. See Original Petition at ¶9.

9. Further, WGMA is not relying on its contracts with ProFad for its claims. Rather, it is relying on a contract with BMI to which ProFad was not a party. WGMA's claims for damages for alleged torts are indistinguishable from its claims for breach of contract. When asked to specify its claims against ProFad, WGMA relies on the language from its contract with BMI stating:

> Professional Advantage guaranteed that the System would (i) run a payroll system with at least the same functionality as West Gulf Maritime's current system, (ii) maintain worker records in the payroll system with at least the level of detail as West Gulf Maritime's current system, and (iii) run accounting programs for West Gulf Maritime and its affiliated entities and benefit programs. The total cost for the System, including any additional vendors, was represented to be approximately $600,000.

*See* Answer to Interrogatory No. 1, attached hereto as Exhibit 6; Compare Original Petition Exhibit A.

10.     Further when asked to differentiate between its bases for each of its claims against ProFad, WGMA relied on its allegations in answer to Interrogatory 1 for each: DTPA, breach of contract, negligent misrepresentation, negligence/gross-negligence, and breach of express and implied warranties.  *See* Exhibit 6 at Answers to Interrogatory Nos. 1-6.

11.     When asked to differentiate its categories of damages for each claim, WGMA refused to do so and lumped everything in to the same categories as follows:

> Plaintiff's items of damages include, the difference between what the BMI system was represented to cost, $600,000, and the amount it did cost, over $2,000,000. The amount overcharged by Professional Advantage. The cost currently being spent to replace the PAM module by Ignite, which has been estimated to be $135,000. The cost of additional personnel to run the BMI system because of the reduced functionality compared to the AS400. The additional personnel cost approximately $250,000 per year for the life of the BMI system.

*See* Exhibit 6 at Answers to Interrogatory No. 7.

### III. SUMMARY JUDGMENT STANDARD

12.     A motion for summary judgment shall be granted if the pleadings and summary judgment evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c), (e); *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983).  A party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact, and thus, it is entitled to judgment as a matter of law.  *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex. 1985).  A defendant's summary judgment motion should be granted if the defendant disproves at least one essential element of a plaintiff's cause of action.  *Vela v. Rocha*, 52 S.W.3d 398, 402 (Tex. App.—Corpus Christi 2001, no pet.).  Evidence favoring the motion for summary judgment is

not considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). However, uncontroverted evidence that supports the summary judgment must be considered in the movant's favor. *Id.*

13. A defendant may conclusively establish, by way of competent summary judgment proof, that at least one essential element of the plaintiff's cause of action is missing. *Bradley v. Quality Svc. Tank Line*, 659 S.W.2d 33, 34 (Tex. 1983). Although a presumption exists for summary judgment purposes that the allegations contained in the plaintiff's pleadings are to be taken as true, where the defendant's summary judgment evidence conclusively negates at least one essential element of the plaintiff's cause of action, the plaintiff must come forward with competent summary judgment evidence to present a fact issue. *Torres v. Western Cas. & Surety Co.*, 457 S.W.2d 50, 52-53 (Tex. 1970).

14. A court may grant a no-evidence motion for summary judgment if the movant can show that an adequate time for discovery has passed, and the non-movant has no evidence to support one or more essential elements of his or her claim or defense. TEX. R. CIV. P. 166a(i). Under Rule 166a(i), the movant needs not produce any proof in support of its no-evidence claim. *Id.* Instead, the mere filing of a motion that specifically points out the elements as to which there is no evidence is enough to shift the burden to the respondent (non-movant) to come forward with enough evidence to take the case to a jury. *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d at 799-800. In other words, the burden to avoid summary judgment falls on the party who bears the burden of proving his or her case at trial - i.e., the Plaintiff in this case. *See Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 197 n.3 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (commenting that under Rule 166a(i) the plaintiff as non-movant has the burden to raise a triable fact issue on each element essential to the plaintiff against each movant defendant).

Accordingly, the non-movant is required to produce competent summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Norris*, 981 S.W.2d at 799-800. If the non-movant fails to adduce sufficient evidence to demonstrate the existence of a material fact issue upon which he or she could prevail at trial, Rule 166a(i) mandates that summary judgment be granted. *Id.*

## IV. AN ADEQUATE TIME FOR DISCOVERY HAS PASSED

15.     This case was filed two years ago in October 2012. Although the case was abated for a time, it the abatement was lifted by agreement as of September 6, 2013, over a year ago. The parties have engaged in significant written discovery and have exchanged expert disclosures. Plaintiff has served what it purports to be expert reports. Even still, Rule 166a(i) "does not require that discovery must have been completed, only that there was 'adequate time.'" *Specifically Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App—Houston [14th Dist.] 2000, pet. denied). As the case has been on file for two years, an adequate time for discovery has passed. *See* TEX. R. CIV. P. 166a(i).

## V. SUMMARY JUDGMENT EVIDENCE

ProFad submits the following as summary judgment evidence in this matter:

Exhibit 1 - Plaintiff's Original Petition

Exhibit 2 - Excerpts from the Statement of Work and Functional Design Specification

Exhibit 3 - January 3, 2012 email from Derek Hall

Exhibit 4 - Email chain between Job Garcia and Craig Erickstad for May 2012 – December 2012 (redacted)

Exhibit 5 - November 12, 2012 email from Derek Hall and excerpts from the attached document (redacted for confidentiality)

Exhibit 6 - WGMA's Answers to Interrogatories

Exhibit 7 - Affidavit of Craig Erickstad

# VI. ARGUMENT AND AUTHORITIES

## WGMA's Tort Causes of Action Are Negated by the Economic Loss Rule

16.     It is clear that in Texas under the economic loss rule, if a plaintiff only seeks to recover for the economic loss or damage to the subject matter of a contract, the plaintiff cannot maintain a tort action — the plaintiff's remedy lies exclusively under the contract.[1]  *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234 (Tex. 2014); *Jim Walter Homes, Inc. v. Reed*, 711. S.W.2d 617 (Tex. 1986); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Sterling Chemicals Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796 (Tex. App. — Houston [1st Dist.], 2007).

17.     Texas courts have specifically addressed the application of the economic loss rule to negligence and negligent misrepresentation claims and have determined that the claim is barred unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim.  *Sterling Chems., Inc.*, 259 S.W.3d at 797; *see, also, D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998)("[T]he damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.").

---

[1] As noted by the Texas Supreme Court in *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234,  (Tex. 2014):

> This Court had held in *Jim Walter Homes, Inc. v. Reed*: "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." 711 S.W.2d 617, 618 (Tex. 1986). *See also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."). We have repeatedly reaffirmed this rule. *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012)   (*per curiam*) ("[A] duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."); *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011) ("[U]nder the economic loss rule, we have held that a claim sounds in contract when the only injury is economic loss to the subject of the contract itself."); *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008) ("'When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract.'" (quoting Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp., 798 S.W.2d 274, 282 (Tex. 1990), and Jim Walter Homes, 711 S.W.2d at 618)); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007) ("The economic-loss rule . . . generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.").

18.     Under the economic loss rule, if a plaintiff only seeks to recover for the economic loss or damage to the subject matter of a contract, the plaintiff cannot maintain a tort action — the plaintiff's remedy lies exclusively under the contract. *Jim Walter Homes, Inc. v. Reed*, 711. S.W.2d 617 (Tex. 1986); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Sterling Chemicals Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796 (Tex. App. — Houston [1st Dist.], 2007).

19.     Here WGMA has failed to differentiate between damages due to breach of contract and damages due to its tort claims. *See* Exhibit 6 at Answers to Interrogatory No. 1-7. Further, it is clear that the purported injuries are economic and can be directly traced to the contractual relationship and obligations between WGMA and BMI. *See Id.* and Original Petition Exhibit A. Further, the services provided by ProFad about which WGMA is suing were provided under contract between ProFad and WGMA. As a result, WGMA has not suffered an injury that is distinct, separate, and independent from the economic loss under a breach of contract claim, therefore its tort claims against ProFad should be dismissed on summary judgment. *Sterling Chems., Inc.*, 259 S.W.3d at 797.

**WGMA's DTPA claim is negated by Tex. Bus. & Comm. Code § 17.49 (g)**

20.     First, it should be noted that, as with its other tort claims, WGMA specifically incorporates the identical acts, omissions, breaches and claims of damages in its DTPA claim as it does into its breach of contract claims. *See* Original Petition at ¶¶19-36. To the extent that ProFad is found to have committed any acts or omissions as alleged by WGMA, this would be no more than a breach of contract. The Texas Supreme Court has repeatedly held that a mere breach of contract, without more, is not a DTPA violation. *Rocky Mt. Helicopters v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998); *Crawford v. Ace Sign, Inc.*,

917 S.W.2d 12, 14 (Tex. 1996); *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983). On this basis alone, TAS's DTPA claim should be dismissed in summary judgment.

21.     Further, Subsection (g) of section 17.49 of the Texas Business and Commerce Code provides the following:

> Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, **or a set of transactions relating to the same project**, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

*See* Tex. Bus. & Comm. Code § 17.49(g)(emphasis added). In other words, the Business and Commerce Code exempts from the DTPA causes of action arising from a transaction, set of transactions, or a project if the total consideration amounts to more than $500,000. *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 820 (Tex. App. Fort Worth 2007). "The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA." *Id.* (*citing Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 473-74 (Tex. App.--Fort Worth 2004, no pet.)(op. on reh'g)); s*ee, also, Geodominion Petroleum, Inc. v. Boone Exploration, Inc.*, 2008 Tex. App. LEXIS 6174, 11-12 (Tex. App. Corpus Christi Aug. 14, 2008)( §17.49(g) exemption applied where the total cost of the project was estimated to exceed $750,000).

22.     Here, it is clear that the set of transactions related to Project Rodeo exceeded $500,000. In fact, WGMA claims that the project that is the subject of this suit was valued at $600,000. See Original Petition at ¶9.

23.     Therefore, the 17.49(g) large transactions exemption should apply and WGMA's DTPA claim should be dismissed in summary judgment. *See* Tex. Bus. & Comm. Code § 17.49(g).

### WGMA's Breach of Contract and Breach of Express/Implied Warranty Claims are Negated by ProFad's Limited Warranty

24.     ProFad's services were provided under an express limited warranty which was applicable for only 30 days. *See* Exhibit 2 at PA0025231.  Any common law implied warranty was expressly modified by this term. So to the extent that WGMA's claims rely on a common law implied warranty, that claim is barred.

25.     The Overtime Calculation was implemented in PAM in compliance with the FDS. Code was developed and delivered to WGMA for testing.  The system went live on January 3, 2012.  See Derek Hall email attached hereto as Exhibit 3.

26.     For the first time in April 2012, WGMA informed PAM that there was a mismatch between the AS400 OT calculation and the PAM OT calculation.  This was discussed during the weekly project meeting on April 17, 2012, and ProFad requested examples of the mismatch from WGMA.  By May 1, 2012, ProFad determined that AS400 did not include all timesheets in the OT pay calculation. It was determined that in the cases where the AS400 OT did not match Professional Advantages OT pay calculation there were Adjusted Timesheets that were not included in the AS400 OT calculation. In the cases where the PAM OT pay calculation and the AS400 OT pay calculation matched the Adjusted Timesheets were included in the AS400 OT calculation.  ProFad requested from WGMA information regarding how AS400 included some but not all Adjusted Timesheets in the OT calculation so that it could include this previously undisclosed requirement into the PAM system.  ProFad repeatedly requested this information through and including December 2012 but received no response.  *See* Exhibit 5,

chain of emails from May 2012 through December 2012 requesting information on the OT issue. Further, this issue remained on the weekly project meeting agenda produced by Derek Hall of Sirius Solutions, Inc., the project manager hired by WGMA to oversee this project, as unresolved and under review by WGMA for a consecutive 21 weeks. In November 2012, the issue was closed and dropped from the agenda and this lawsuit was filed. See Exhibit 5, November 12, 2012 email from Derek Hall with excerpts from attached document titled "WGMA Payroll Key Issues Status Report 11-12-2012 v56.xlsx."

27. Further, to the extent that WGMA is alleging that ProFad breached an express warranty by failing to fulfill one of its contractual duties, this does not amount to a breach of warranty claim. As stated in *Staton Holdings, Inc. v. Tatum LLC*:

> The mere identification of what services are to be performed is not, without more, an express warranty that those services are to be performed to any particular standard or quality. The parties certainly could have included such a promise as to the quality of the services and if it formed part of the basis of the bargain it would establish an express warranty. But here there is no promise as to the quality of the services Tatum agreed to provide. HN6We will not rewrite the bargain the parties made simply because one party is now dissatisfied with the agreement or wishes it included other words.

*See Staton Holdings, Inc. v. Tatum, L.L.C.*, 2014 Tex. App. LEXIS 6273 (Tex. App. Dallas June 10, 2014).

28. WGMA failed to preserve its rights under the limited warranty by properly performing UAT testing and informing ProFad of its problems within 30 days of delivery of the code. Other than the limited 30-day warranty, there is no other express warranty at issue in this matter. On this basis alone, WGMA's breach of contract and breach of express/implied warranty claims fail and should be dismissed in summary judgment.

**The Uncontroverted Evidence Shows That WGMA and its Project Manager Caused Any Alleged Damages, ProFad Did Not Fail to Fulfill Any Obligations or Contractual Terms**

29.     As noted above, WGMA is not relying on its contracts with ProFad for its breach of contract claims.  Rather, it is relying on a contract with BMI to which ProFad was not a party.  See Exhibit 6 at Nos. 1-7.

30.     WGMA failed to fulfill its obligation to perform User Acceptance Testing within 30 days of delivery of the code by ProFad.  Further, WGMA failed to fulfill its obligation under the Statement of Work to provide complete requirements and specifications.  For whatever reason, WGMA chose not to provide information to ProFad which would have allowed it to address the OT pay calculation mismatch.  Instead WGMA filed suit and has allegedly hired another contractor to implement a fix.  On this basis alone, WGMA cannot point to any term or obligation in any contract that ProFad has breached which caused WGMA's problems with the OT pay calculation.  Rather, WGMA and its contracted project manager failed to provide information and effectively manage communications between the project stakeholders which lead to any alleged damages.

31.     No issues of fact exist and WGMA's breach of contract claim fails and should be dismissed in summary judgment.

## NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

**WGMA Has No Evidence to Support One or More of its Claims Against ProFad and They Must Be Dismissed in Summary Judgment**

*Negligence, Gross Negligence and Negligent Misrepresentation*

32.     To prove a negligent misrepresentation claim, the Plaintiff must prove the following essential elements:

(1)     ProFad made a misrepresentation to the Plaintiff in the course of its business or in a transaction in which it had an interest;

(2)     ProFad supplied the false information for the guidance of others;

(3)     ProFad did not exercise reasonable care or competence in obtaining or communicating the information;

(4)     The Plaintiff justifiably relied on the representation; and

(5)     ProFad's negligent misrepresentation proximately caused the Plaintiff's injury.

*See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

33.     Under Texas law, a negligence cause of action consists of four elements:

(1)     A legal duty owed by one party to another;

(2)     A breach of that duty;

(3)     Actual injury or harm; and

(4)     A reasonably close causal connection between the breach of duty and resulting injury.

*See Connor v. Waltrip*, 791 S.W.2d 537, 539 (Tex. App.–Dallas 1990, no writ); *Northwest Mall, Inc. v. Lubri-Lon, Inc.*, 681 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1984, writ ref. n.r.e.). The burden rests on the plaintiff to present evidence of probative force with respect to each of these elements. *Oldaker v. Lock Construction Company,* 528 S.W.2d 71, 77 (Tex. Civ. App.—Amarillo 1975, writ ref. n.r.e.). Plaintiff has produced no evidence regarding any elements of negligence or negligent misrepresentation against ProFad, and thus summary judgment is proper pursuant to Texas Rule of Civil Procedure 166a(i) on Plaintiff's claims for negligence and negligent misrepresentation.

34.     Likewise, to date, Plaintiff has produced no evidence regarding any elements of ProFad's alleged gross negligence or malice, and thus summary judgment is proper pursuant to Texas Rule of Civil Procedure 166a(i) on Plaintiff's claim for gross negligence.

***Breach of Implied and/or Express Warranties***

35.     Plaintiff has failed to establish its burden with respect to each of the elements for the cause of action for breach of implied and/or express warranties. In order to prevail on those

claims, Plaintiff must prove that the alleged warranties were given; that the warranty was breached; and that the breached proximately caused the injury complained of. Plaintiff's only bases for any alleged warranties have been representations from the BMI contract to which ProFad was not a part. Plaintiff has presented no competent summary judgment evidence raising a genuine issue of material fact as to its cause of action for breach of implied and/or express warranties. Tex. R. Civ. P. 166a(i); *Norris*, 981 S.W.2d at 799-800. Therefore, Rule 166a(i) mandates that summary judgment be granted. *Id.*

### Breach of Contract

36. The following are the four elements of a breach of contract action: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex. App.--Houston [14th Dist.] 2002, no pet.). Plaintiff has presented no competent summary judgment evidence raising a genuine issue of material fact as to its cause of action for breach of implied and/or express warranties. Tex. R. Civ. P. 166a(i); *Norris,* 981 S.W.2d at 799-800. In fact, as noted above, WGMA's claims rely on a contract to which ProFad is not a party. Further, there is no evidence as to which, if any, of the obligations in the contracts that do exist between WGMA and ProFad are alleged to have been breached. Therefore, Rule 166a(i) mandates that summary judgment be granted. *Id.*

### Texas Deceptive Trade Practices Act

37. Plaintiff has alleged that ProFad has violated the Texas Deceptive Trade Practices Act ("DTPA"). In order to sustain a claim for violation of the DTPA, Plaintiff must prove (1) that she is a consumer, (2) that Invacare has committed a false, misleading, or deceptive act or practice within the meaning of §17.46 of the DTPA or any unconscionable action or course of

action; (3) and that such action was a producing cause of actual damages. Tex. Bus. & Com. Code Ann. § 17.50(a). Plaintiff has presented no evidence that ProFad has engaged in any false, misleading or deceptive act which directly caused injury. Plaintiff has presented no competent summary judgment evidence raising a genuine issue of material fact as to its DTPA cause of action. Tex. R. Civ. P. 166a(i); *Norris*, 981 S.W.2d at 799-800. Therefore, Rule 166a(i) mandates that summary judgment be granted. *Id.*

WHEREFORE, PREMISES CONSIDERED Defendant Professional Advantage Software Solutions, Inc. prays that the Court grant its Motion for Summary Judgment dismissing all of Plaintiff's claims, and for such other and further relief, both general and special, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
Katherine L. Sunstrom
Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX 77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
*Attorneys for Defendant*
*Professional Advantage Software Solutions, Inc.*

## CERTIFICATE OF SERVICE

On this 8th day of September, 2014, a true and correct copy of the foregoing instrument has been provided to all parties by United States mail, courier service, or telefax transmission.

Timothy M. McCloskey/Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

Stephanie Laird Tolson
McGlinchey Stafford
1001 McKinney, Suite 1500
Houston, Texas 77002

Scott D. Marrs/Andrew B. McGill
Beirne, Maynard & Parsons, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

_____
Katherine Sunstrom

CAUSE NO. 2012-58827                                                  **R&R**

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | § § § | IN THE DISTRICT COURT OF |
| VS. | § § | HARRIS COUNTY, TEXAS |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | § § § § § | 151ST JUDICIAL DISTRICT |

**PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT LIMITING LIABILITY AND DISMISSING WARRANTY CLAIMS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Professional Advantage Software Solutions, Inc. ("ProFad"), Defendant in the above-captioned and numbered cause, and files this Motion for Partial Summary Judgment Limiting Liability and in support hereof would respectfully show the Court the following:

**I.   SUMMARY OF THE ARGUMENT**

1.      ProFad's motion is brought on the following grounds:

- The Software License Agreement is valid and enforceable;

- ProFad cannot be held liable for incidental, special, indirect or consequential damages, loss of business, loss of profits, loss of goodwill or tortious conduct however caused (including negligence);

- Any damages are limited to the price paid to ProFad for the software; and

- ProFad expressly disclaims all warranties not included in the license agreement including but not limited to expressly disclaiming the warranty that the functions in the software will meet WGMA's requirements.

557218.1 PLD 0002573 8786 KLS

EXHIBIT 7

## II. BACKGROUND FACTS

2.       This case involves a project wherein Plaintiff West Gulf Maritime Association, Inc. ("WGMA"), hired via separate agreements, Technology Support, Inc., Business Microvar, Inc. and Professional Advantage for a project related to WGMA's payroll, HR and accounting systems.  According to WGMA's Original Petition and the discovery to date in this matter, WGMA and Defendant Business Microvar, Inc. d/b/a Interdyn BMI ("BMI") entered into an agreement ("the October 4 Agreement") on October 4, 2010, regarding the implementation of Microsoft Dynamics Great Plains ("Dynamics GP") financial accounting system and Personnel Agency Management ("PAM").  ProFad was later hired to customize and deliver the code for the PAM system.  On November 5, 2010, WGMA signed several project documents with ProFad including but not limited to a Statement of Work and a Functional Design Specification.

3.       On November 11, 2010, Craig Erickstad emailed Derek Hall of Tatum (the project manager hired by WGMA to oversee the project), and Daphne Bernicker of WGMA, the Software License Agreement which governs the licensing of PAM as well as maintenance and other enhancements.  *See* Affidavit of Craig Erickstad attached hereto as Exhibit A.  A true and correct copy of the November 11, 2010, email and attached agreement are attached to this affidavit as Exhibit A-1.  Though WGMA did not sign this license agreement, they continue to pay and renew their subscription to the PAM Annual Enhancement Plan.  *See* Exhibit A.

4.       Derek Hall forwarded the Software License Agreement to WGMA's Nathan Wesely and Daphne Bernicker with certain sections highlighted including portions of the warranty disclaimer and the limitations of remedies.  *See* Exhibit B.  WGMA was clearly on notice of the terms of the Software License Agreement and assented to those terms by accepting

557218.1 PLD 0002573 8786 KLS

2

delivery of the PAM module, paying the purchase price of the PAM software and continuing to renew the terms under the Annual Enhancement Plan.

5. The price paid by WGMA for PAM before customizations was $50,400.00. *See* Statement of Work at page 14 (previously filed under seal by Plaintiff at Exhibit E to its Response to BMI's Motion for Partial Summary Judgment on Plaintiff's Extra-contractual Claims on September 22, 2014).

6. ProFad expressly disclaims express or implied warranties as follows:

EXCEPT AS STATED ABOVE, PA MAKES NO OTHER WARRANTIES REGARDING THE SOFTWARE OR DOCUMENTATION, INCLUDING, WITHOUT LIMITATION, EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS THE WARRANTIES OF FITNESS FOR A PARTICULAR P1JRPOSE OR MERCHANTABILITY, AND ANY OTHER WARRANTY, EXPRESS OR IMPLIED.

*See* Exhibit B at ¶3(d).

7. The Software License Agreement limits ProFad's liability as follows:

LIMITATION OF LIABILITY
(i) IN NO EVENT SHALL PA OR ANYONE ELSE WHO HAS BEEN INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF THE SOFTWARE OR THE DOCUMENTATION BE LIABLE FOR **ANY INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, LOSS OF BUSINESS, LOSS OF PROFITS, LOSS OF GOODWILL OR TORTIOUS CONDUCT HOWEVER CAUSED (INCLUDING NEGLIGENCE) RELATING TO, CAUSED BY OR ARISING OUT OF ANY BREACH OF OBLIGATIONS OR DELAY IN DELIVERY OF SOFTWARE OR DOCUMENTATION UNDER THIS AGREEMENT OR FROM LICENSEE'S USE OR INABILITY TO USE THE SOFTWARE, EVEN IF PA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES**.
…
(iii) EXCEPT FOR ANY LIABILITY WHICH MAY ARISE UNDER SECTION 5, **ANY DAMAGES THAT PA IS REQUIRED TO PAY FOR ANY AND ALL CAUSES, WHETHER FOR NEGLIGENCE, BREACH OF CONTRACT OR OTHERWISE, REGARDLESS OF THE FORM OF ACTION, SHALL, IN THE AGGREGATE, BE LIMITED TO THE PRICE PAID BY LICENSEE TO PA FOR THE SOFTWARE.**

*See* Exhibit B at ¶¶3(e)(i)-(iii)(emphasis added).

8.      The interpretation of these terms is a matter of law and the provisions are clear on its face. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005)("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.").

## III.     ARGUMENT AND AUTHORITIES

### A.  THE SOFTWARE LICENSE AGREEMENT IS VALID AND ENFORCEABLE.

9.      There is no dispute that WGMA was aware of the licensing terms for using PAM as early as November 11, 2010.  WGMA had actual knowledge of those license terms and accepted those terms by taking delivery of PAM and continuing to pay for the Annual Enhancement Plan.  Software users are often held to the terms of license agreements wherein they are given actual knowledge of the terms of the license and subsequently accept the benefit of that license.  "It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the  offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 U.S. Dist. LEXIS 96230, 19-20 (N.D. Tex. Sept. 12, 2007); *see also One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 269 (5th Cir. Tex. 2011)("The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms.").

10.      Based on the foregoing, the Software License Agreement is valid and enforceable and Professional Advantage requests that it be enforced as follows:

557218.1 PLD 0002573 8786 KLS

4

## B. ANY DAMAGES ARE LIMITED TO THE PRICE PAID TO PROFAD FOR THE SOFTWARE

11.     Contractual limitations of liability are enforceable unless they violate public policy, "and generally [they do] not if no disparity of bargaining power exists between the parties." *SP Terrace, L.P.*, LLC, Case No. 01-09-00155-CV, 2010 Tex. App. LEXIS 3438, at 27-28; *see, also, Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App.-Fort Worth 2005, pet. denied) ("In the absence of a controlling public policy to the contrary, contracting parties can limit their liability in damages to a specified amount. In cases examining limitation of liability clauses, the courts tend to look to the relationship of the parties and their bargaining power.").

12.     No evidence of disparity of bargaining power exists in this case. All negotiations and terms were conducted at arm's length between corporate entities. Thus, ProFad's limitation of liability clause should be enforced. Specifically, WGMA is asking for the following categories of damages set out in the Affidavit of WGMA's Nathan Wesely as follows:

> 22.WGMA's damages include the difference between what the BMI system was represented to cost, $600,000, and the amount it did cost, over $2,000,000; the amount overcharged by ProFad; the cost currently being spent to replace the PAM module by Ignite, which has been estimated at $135,000; the cost of additional personnel to run the BMI system because of the reduced -functionality compared to the AS400; the additional personnel costing approximately $250,000 per year for the life of the BMI system; and the difference between the value of what WGMA received in the transaction and the purchase price or value given for it.

> 23. Due to the inability of the Defendants to provide WGMA with a system that met its functional requirements, WGMA incurred the following expenses:

| | |
|---|---|
| Ignite Media | $127,707.07 |
| Interdyn. BMI | $673,840.02 |
| Dave Kesian | $4,455.00 |
| Professional Advantage | $207,281.65 |
| Sirius Solutions | $304,456.53 |
| Tatum | $333,127.93 |
| Technisource, Inc. | $228,804.00 |
| Technology Support | $46,843.06 |
| Tribridge Holdings | $66,033.77 |

557218.1 PLD 0002573 8786 KLS

5

| Expenses from Initial Payment for Interdyn | $60,983.00 |
| Profad Licenses | $3,878.00 |

*See* Exhibit C at ¶¶22-23.

13.     This is the most detailed damages analysis the Plaintiff has produced to date and it is impossible to determine which of these alleged items of damages are incidental, consequential or direct damages flowing from any alleged wrongdoing by ProFad in order to properly apply the limitation of liability clause.  However, they do clearly far exceed the price of the software which was $50,400.00.  *See* Statement of Work at page 14 (previously filed under seal by Plaintiff at Exhibit E to its Response to BMI's Motion for Partial Summary Judgment on Plaintiff's Extra-contractual Claims on September 22, 2014).

14.     Further and finally, the Software License Agreement excludes liability for any tortious conduct by Professional Advantage, including negligence.  *See* Exhibit B at ¶¶3(e)(i).

15.     Based on the foregoing, WGMA agreed to a valid and enforceable limitation of liability clause.  No genuine issues exist as to any material fact and Defendant ProFad is entitled to Judgment as a matter of law.  Specifically, Defendant ProFad's potential total aggregate liability to Plaintiff for damages in this matter is at most $50,400.00.

### C.  PROFAD EXPRESSLY DISCLAIMS ALL WARRANTIES OTHER THAN THOSE SET FORTH IN THE SOFTWARE LICENSE AGREEMENT

16.     As set forth above, ProFad has expressly disclaimed all warranties other than those set forth in the Software License Agreement.  Further, ProFad expressly disclaims UCC warranties as follows: EXPRESSLY DISCLAIMS THE WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY, AND ANY OTHER WARRANTY, EXPRESS OR IMPLIED."  *See* Exhibit B at ¶3(d).  Based on the foregoing, no genuine issue exists as to any material fact and Defendant ProFad is entitled to judgment as a matter of law

557218.1 PLD 0002573 8786 KLS

6

limiting all claims for breach of warranty to the express warranties set forth in the Software License Agreement. Tex. R. Civ. P. 166a.

## NOTICE UNDER TEX. R. CIV. P. 193.7

17.     ProFad hereby puts WGMA on notice of its intention to use WGMA's production documents as evidence herein.

WHEREFORE, PREMISES CONSIDERED, Defendant Professional Advantage Software Solutions, Inc. prays that this matter be set for submission and that upon submission Professional Advantage Software Solutions, Inc. be granted this summary judgment providing that (1) Professional Advantage Software Solutions, Inc.'s potential total aggregate liability to Plaintiff for damages in this matter is, at most, $50,400, and (2) limiting all claims for breach of warranty to the express warranties set forth in the Software License Agreement; and for such other and further relief, at law and in equity, to which defendant is justly entitled.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
       Katherine L. Sunstrom
       Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX  77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
*Attorneys for Defendant*
*Professional Advantage Software Solutions, Inc.*

## CERTIFICATE OF SERVICE

On this 13th day of October, 2014, a true and correct copy of the foregoing instrument has been provided to all parties by United States mail, courier service, or telefax transmission.

Timothy M. McCloskey
Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

Stephanie Laird Tolson
McGLINCHEY STAFFORD
1001 McKinney, Suite 1500
Houston, Texas 77002

Scott D. Marrs
Andrew B. McGill
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

_____
Katherine Sunstrom

CAUSE NO. 2012-58827

| WEST GULF MARITIME ASSOCIATION, INC. | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | § | |
| | § | |
| | § | |
| | § | 151ST JUDICIAL DISTRICT |

**PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S
ANSWER TO FIRST AMENDED PETITION AND COUNTERCLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC. ("PROFESSIONAL ADVANTAGE") Defendant and now Counter-Plaintiff, and files this answer and counterclaim and in support of same would respectfully show the Court the following:

**ANSWER**

1. As provided in Rule 92 of the Texas Rules of Civil Procedure, Defendant enters a general denial of matters pleaded by Plaintiffs and asks that these matters be properly decided by this Honorable Court.

2. Defendant states that it has been sued in the incorrect name. The correct name of the Defendant is Defendant Professional Advantage Software Solutions, Inc.

3. Pleading further, and in the alternative, Defendant affirmatively pleads that it is not liable under any theory of vicarious or derivative liability for the conduct of any other defendant, nor does any other theory of liability support the imposition of responsibility on this Defendant for the conduct of others.

~~EXHIBIT 1~~

EXHIBIT 8

557737.1 PLD 0002573 8786 KLS

1

4. Pleading further, and in the alternative, Defendant affirmatively pleads that some or all of Plaintiff's claims are barred by the doctrines of ratification, waiver, acquiescence, and/or estoppel.

5. Pleading further and in the alternative, Plaintiff's claims for breach of implied and express warranties fail because they have been waived by contract.

6. Pleading further and in the alternative, Plaintiff's breach of contract claims fail because Plaintiff failed to fulfill all of the requirements under the contracts prior to the alleged breach.

7. Pleading further and in the alternative, Plaintiff's claims fail because they have been limited by contract.

8. Pleading further and in the alternative, Plaintiff's claims fail because they have been contractually waived.

9. Pleading further, and in the alternative, Defendant affirmatively pleads that some or all of Plaintiff's claims are barred by Texas Civil Practice & Remedies Code § 33.001 because Plaintiff's responsibility for the alleged damages, if any, is greater than 50 percent. Defendant requests the trier of fact determine as to each cause of action asserted the percentage of responsibility to each party to this action.

## DEMAND FOR JURY TRIAL

10. Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Defendant has previously requested a jury trial and paid the fee.

## COUNTERCLAIM

### I.    PARTIES

1.    Defendant/Counter-Plaintiff Professional Advantage is a foreign company doing business in Texas and has made an appearance and is party to this lawsuit.

2.    Plaintiff/Counter-Defendant West Gulf Maritime Association is a domestic non-profit corporation doing business in Texas.  No service needs to be had on WGMA because it has made an appearance and is a party to this lawsuit.

### II.    BACKGROUND FACTS

3.    This case involves a project wherein Plaintiff West Gulf Maritime Association, Inc. ("WGMA"), hired via separate agreements, Technology Support, Inc., Business Microvar, Inc. and Professional Advantage for a project related to WGMA's payroll, HR and accounting systems.  Derek Hall of Sirius Solutions, LLP (first on behalf of Tatum, LLC, then later on behalf of Sirius Solutions, LLP), was hired as a project manager and consultant on the project. According to WGMA's Original Petition and the discovery to date in this matter, WGMA and Defendant Business Microvar, Inc. d/b/a Interdyn BMI ("BMI") entered into an agreement ("the October 4 Agreement") on October 4, 2010, regarding the implementation of Microsoft Dynamics Great Plains ("Dynamics GP") financial accounting system and Personnel Agency Management ("PAM").  As a part of that agreement, BMI represented that it would provide a system with certain attributes.  Professional Advantage was later hired to customize and deliver the code for the PAM system.  Based on BMI's representations and the alleged failure of the system, WGMA has filed suit against All Defendants.

4.    BMI recommended PAM as the solution to WGMA's payroll needs and Derek Hall of Sirius Solutions recommended that WGMA sign the contracts with BMI and Professional Advantage.  During the course of the project and shortly after the installation of PAM, it became

clear that WGMA was unable to provide requirements to Professional Advantage to include in the WGMA system related to overtime and the import of excel timesheets among other things. Professional Advantage only recently discovered through production documents in this litigation, that rather than provide Professional Advantage with the requirements, with the help of BMI and Sirius Solutions, LLP, WGMA developed the missing rules and calculations that WGMA was contractually obligated to provide Professional Advantage so that it could develop a system for WGMA's payroll needs. WGMA provided these rules and calculations to third-party IgniteMedia, LLC in developing a new solution to replace PAM using the rules and calculations that Professional Advantage had been requesting for seven months. If Professional Advantage had been given these rules and calculations, they could have been coded within days and this lawsuit would have been avoided entirely. By failing to provide the proper rules and calculations to Professional Advantage, WGMA is in breach of its Statement of Work and Functional Design Specification for Rules Processing, signed with Professional Advantage.

5. Prior to the installation of PAM, WGMA received Professional Advantage's license terms. On November 11, 2010, Craig Erickstad emailed Derek Hall of Tatum (the project manager hired by WGMA to oversee the project), and Daphne Bernicker of WGMA, the Software License Agreement which governs the licensing of PAM as well as maintenance and other enhancements. A true and correct copy of the November 11, 2010, email and attached agreement are attached to this affidavit as Exhibit A.

6. Derek Hall forwarded the Software License Agreement to WGMA's Nathan Wesely and Daphne Bernicker with certain sections highlighted including portions of the warranty disclaimer and the limitations of remedies. WGMA was clearly on notice of the terms of the Software License Agreement and assented to those terms by accepting delivery of the

PAM module, paying the purchase price of the PAM software and continuing to renew the terms under the Annual Enhancement Plan.

7.      The price paid by WGMA for PAM before customizations was $50,400.00.  *See* Statement of Work at page 14.  Excerpts of the Statement of Work are attached hereto as Exhibit B.

8.      Professional Advantage expressly disclaims express or implied warranties as follows:

> EXCEPT AS STATED ABOVE, PA MAKES NO OTHER WARRANTIES REGARDING THE SOFTWARE OR DOCUMENTATION, INCLUDING, WITHOUT LIMITATION, EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS THE WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY, AND ANY OTHER WARRANTY, EXPRESS OR IMPLIED.

*See* Exhibit A at ¶3(d).

9.      The Software License Agreement limits Professional Advantage's liability as follows:

> LIMITATION OF LIABILITY
> (i) IN NO EVENT SHALL PA OR ANYONE ELSE WHO HAS BEEN INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF THE SOFTWARE OR THE DOCUMENTATION BE LIABLE FOR **ANY INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, LOSS OF BUSINESS, LOSS OF PROFITS, LOSS OF GOODWILL OR TORTIOUS CONDUCT HOWEVER CAUSED (INCLUDING NEGLIGENCE) RELATING TO, CAUSED BY OR ARISING OUT OF ANY BREACH OF OBLIGATIONS OR DELAY IN DELIVERY OF SOFTWARE OR DOCUMENTATION UNDER THIS AGREEMENT OR FROM LICENSEE'S USE OR INABILITY TO USE THE SOFTWARE, EVEN IF PA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES**.
> …
> (iii) EXCEPT FOR ANY LIABILITY WHICH MAY ARISE UNDER SECTION 5, **ANY DAMAGES THAT PA IS REQUIRED TO PAY FOR ANY AND ALL CAUSES, WHETHER FOR NEGLIGENCE, BREACH OF CONTRACT OR OTHERWISE, REGARDLESS OF THE FORM OF ACTION, SHALL, IN THE AGGREGATE, BE LIMITED TO THE PRICE PAID BY LICENSEE TO PA FOR THE SOFTWARE.**

*See* Exhibit A at ¶¶3(e)(i)-(iii)(emphasis added).

10. Further, under the Statement of Work, WGMA had the following non-exclusive obligations:

Perform the services and produce the deliverables described elsewhere in this Statement of Work and interact with Professional Advantage in a professional and workmanlike manner.

*See* Exhibit B at Page 9.

11. Further, under the Functional Design Specification for Rules Processing, the Critical Success Factors/Critical Business Issues included the "Ability to convert Calculate 'Overtime Due' based on the rules and calculation provided by WGMA and listed below." *See* Exhibit C, Excerpts of the Functional Design Specification for Rules Processing, at page 3. By failing to provide the proper rules and calculations to Professional Advantage, WGMA is in breach of its Statement of Work and Functional Design Specification for Rules Processing, signed with Professional Advantage. As a result, Professional Advantage has suffered actual damages for loss of benefits of the contract, economic injury of lost opportunity and anticipated profits, attorneys' fees and costs of this litigation.

12. Professional Advantage is not a party to the October 4, 2010 agreement between BMI and WGMA and has no obligations under it. *See* Exhibit C. If Professional Advantage is found to be a party under the October 4, 2010, agreement, it is entitled to enforce the limitation of liability clause therein, including, but not limited, to an express disclaimer of implied and express warranties and the waiver of special and consequential damages.

### III.    COUNT I- BREACH OF CONTRACT

13.    Counter-Plaintiff entered into valid and enforceable contracts with WGMA. WGMA breached the contracts.  Counter-Plaintiff had performed all of the requirements under the contracts prior to WGMA's breach.  WGMA's breach of contract caused injury to Counter-Plaintiff.  As a result of WGMA's breach of contract, Counter-Plaintiff has suffered actual damages.  Further, Counter-Plaintiff is entitled to attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8).

### IV.    COUNT II-DECLARATORY JUDGMENT

14.    Counter-Plaintiff and WGMA are parties to the license agreement, Statement of Work and Functional Design Specification for Rules Processing agreements.  Although WGMA has filed suit for breach of contract on non-specific terms, it has not requested a declaration of the rights between the parties.

15.    There is a current and justiciable controversy between Counter-Plaintiff and WGMA such that a declaratory judgment is appropriate and necessary to determine the rights and obligations of the parties.  Tex. Civ. Prac. & Rem. Code § 37.004(a).

16.    Counter-Plaintiff requests the following declaratory findings and corresponding relief:

- Professional Advantage is not a party to the October 4, 2010 agreement between BMI and WGMA and has no obligations under it;

- If Professional Advantage is found to be a party under the October 4, 2010, agreement, it is entitled to enforce the limitation of liability clause therein, including, but not limited, to an express disclaimer of implied and express warranties and the waiver of special and consequential damages;

- Counter-Plaintiff fully performed under the agreements;

- Counter-Plaintiff did not breach the agreements;

- WGMA's damages, if any, are limited to the price paid by WGMA for the PAM software;

- WGMA has waived any implied or express warranties other than those listed in the license agreement;

- WGMA was contractually obligated to provide rules and calculation for Overtime Due as delineated in the agreements;

- WGMA failed to provide rules and calculations for Overtime Due; and

- Counter-Plaintiff is entitled to actual damages, attorneys' fees and costs for WGMA's breach.

V.    COUNT III- ATTORNEYS' FEES AND COSTS UNDER UNIFORM DECLARATORY JUDGMENT ACT

17.    Separate and apart from its right to attorneys' fees and costs under Tex. Civ. Prac. & Rem. Code § 38.001(8), Counter-Plaintiff is entitled to its costs and reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §37.009.

WHEREFORE, Defendant/Counter-Plaintiff prays that WGMA takes nothing by its suit, that the Court render judgment against WGMA as requested above, for prejudgment and post-judgment interest as provided by law; and for such other and further relief to which Defendant/Counter-Plaintiff may be justly entitled.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
          Katherine L. Sunstrom
          Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX  77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
*Attorneys for Defendant*
*Professional Advantage Software Solutions, Inc.*

**CERTIFICATE OF SERVICE**

On this 10th day of November, 2014, a true and correct copy of the foregoing instrument has been provided to all parties by United States mail, courier service, or telefax transmission.

Timothy M. McCloskey
Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

Stephanie Laird Tolson
McGLINCHEY STAFFORD
1001 McKinney, Suite 1500
Houston, Texas 77002

Scott D. Marrs
Andrew B. McGill
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

_____
Katherine Sunstrom

| | | |
|---|---|---|
| WEST GULF MARITIME ASSOCIATION, INC. | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | HARRIS COUNTY, TEXAS |
| BUSINESS MICROVAR, INC. D/B/A INTERDYN BMI, PROFESSIONAL ADVANTAGE AND TECHNOLOGY SUPPORT, INC. | §<br>§<br>§<br>§<br>§ | 151ST JUDICIAL DISTRICT |

### PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S FIRST SET OF REQUESTS FOR ADMISSIONS, SECOND SET OF INTERROGATORIES, AND SECOND SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF

TO: Plaintiff, West Gulf Maritime Association, Inc., by and through its attorneys of record, Timothy M. McCloskey and Blake E. Rizzo, Carrigan, McCloskey, and Roberson LLP, 945 Heights Blvd., Houston, Texas 77008

Defendant Professional Advantage and Technology Support, Inc. ("PA") serves this First

Set of Requests for Admission, Interrogatories and Requests for Production upon Plaintiff, West

Gulf Maritime Association, Inc. ("WGMA") as allowed by the Texas Rules of Civil Procedure.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
      Katherine L. Sunstrom
      Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX 77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
*Attorneys for Defendant*
*Professional Advantage Software Solutions, Inc.*

# EXHIBIT 9

## <u>CERTIFICATE OF SERVICE</u>

On this 19th day of March, 2015, a true and correct copy of the foregoing instrument has been provided to all parties by United States mail, courier service, or telefax transmission.

Timothy M. McCloskey
Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

_____
Katherine Sunstrom

## Definitions

1. "Identify" means to provide the complete name, address, telephone number of a person or to provide the complete description, title, date, location and form of a document or other tangible evidence.

2. "Document" means any written, recorded or graphic matter however produced or reproduced including, but not limited to, correspondence, letters, memoranda, telegrams, receipts, union paperwork, memoranda, minutes of any meetings, reports, notes, schedules, tabulations, productions, checks, statements, returns, receipts, purchase orders, work papers, financial calculations and representations, accounting and diary entries, invoices, inventory sheets, ledgers, journals, itineraries, passports, visas, trial balances, telegrams, mailgrams, contracts, bills, agreements, offers, notations of any sort of conversation, analyses, video tapes, audio recordings, calendars, tape recordings, bulletins, printed matter, galley sheets, computer disks, computer diskettes, computer tapes, computer printouts, teletypes, telecopies, photographs, deeds, mortgages, manuscripts, electronic mail (Email or email), telephone logs, telephone records and all other writings and records, whether or not claimed to be privileged, in your possession, custody or control, or in the possession, custody or control of your present or former counsel, agents, representatives, brokers, assigns, successors and employees and all persons acting on their behalf. "Document" includes the original and all drafts, as well as all copies which differ in any respect from the original.

3. "BMI" shall include Business Microvar, Inc. d/b/a Interdyn BMI.

4. "Professional Advantage" and "PA" shall include Professional Advantage Software Solutions, Inc.

5. "Technology Support" shall include Technology Support, Inc.

6. "Defendants" shall include BMI, Professional Advantage, and Technology Support.

7. "WGMA" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

8. "Plaintiff" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

9. "You" and "your" shall include Plaintiff West Gulf Maritime Association, Inc. and any Employee, Representative, Agent, Director, or other person associated with and/or acting on behalf of Plaintiff and/or companies or organizations associated with Plaintiff.

10. "System" means the financial accounting, reporting, payroll processing, and related applications as defined in Plaintiff's Original Petition.

11.    Any undefined terms shall have the meaning provided them in the normal course of the English language used in the United States and as defined by any dictionary of the English language available in the United States (e.g. Webster's New World Dictionary).

## FIRST REQUESTS FOR ADMISSION

1.    Admit that Daphne Bernicker had authority to sign Change Orders related to the System on behalf of WGMA.

**RESPONSE:**

2.    Admit that Nathan Wesely had authority to sign Change Orders related to the System on behalf of WGMA.

**RESPONSE:**

3.    Admit that Nathan Wesely had authority to enter into contracts related to the System on behalf of WGMA.

**RESPONSE:**

4.    Admit that as of November 5, 2010, WGMA was of the opinion that its contract was with Interdyn/BMI not Professional Advantage.

**RESPONSE:**

5.    Admit that as of November 5, 2010, WGMA was of the opinion that the System had been delayed due to Professional Advantage.

**RESPONSE:**

6.    Admit that as of November 5, 2010, WGMA was of the opinion that Professional Advantage had failed to properly conduct due diligence related to the System.

**RESPONSE:**

7.    Admit that as of December 20, 2010, WGMA was conducting an independent evaluation to see whether the System would be viable.

**RESPONSE:**

8.    Admit that as of December 29, 2010, Tribridge represented to WGMA that it was confident that the System would work.

**RESPONSE:**

9.      Admit that Timesheet Line count by 'PORT' was not part of WGMA's original specifications for the System.

**RESPONSE:**

10.      Admit that on December 1, 2010, WGMA asked PA to count the timesheet lines by customer.

**RESPONSE:**

11.      Admit that Change Order #5 was signed by WGMA on December 8, 2010.

**RESPONSE:**

12.      Admit that WGMA deemed Change Order #5 complete on February 2, 2011.

**RESPONSE:**

13.      Admit that in March 2012 Professional Advantage was asked for the first time to breakdown the timesheets line count by the 'PORT' in addition to the company as stated in Change Order #5.

**RESPONSE:**

14.      Admit that Change Order #30 was delivered to WGMA for signature on May 7, 2012.

**RESPONSE:**

15.      Admit that on or before May 8, 2012, WGMA signed and delivered Change Order #30 to PA.

**RESPONSE:**

16.      Admit that WGMA passed Change Order #30 through testing on August 14, 2012.

**RESPONSE:**

17.      Admit that BMI and WGMA determined that there would be four decimal places in PAM.

**RESPONSE:**

18.      Admit that Change Order #26 related to changing decimal places in PAM from two to four was delivered to WGMA on March 6, 2012.

**RESPONSE:**

19.     Admit that WGMA signed and returned Change Order #26 on March 15, 2012.

**RESPONSE:**

20.     Admit that WGMA deemed Change Order #26 complete on April 24, 2012.

**RESPONSE:**

21.     Admit that WGMA requested Change Order #1.

**RESPONSE:**

22.     Admit that WGMA signed Change Order #1.

**RESPONSE:**

23.     Admit that WGMA requested Change Order titled –Payroll Functional Specification #2.

**RESPONSE:**

24.     Admit that WGMA signed Change Order titled –Payroll Functional Specification #2 on November 23, 2010.

**RESPONSE:**

25.     Admit that WGMA requested Change Order titled Timesheet Import – Remap and add new User Defined Field Labels.

**RESPONSE:**

26.     Admit that WGMA signed Change Order titled Timesheet Import – Remap and add new User Defined Field Labels on December 3, 2010.

**RESPONSE:**

27.     Admit that WGMA requested Change Order No. 6.

**RESPONSE:**

28.     Admit that WGMA signed Change Order No. 6.

**RESPONSE:**

29.     Admit that WGMA requested Change Order No. 8.

30. Admit that WGMA signed Change Order No. 8 on January 21, 2011.

**RESPONSE:**

31. Admit that WGMA requested Change Order No. 9.

**RESPONSE:**

32. Admit that WGMA signed Change Order No. 9 on February 28, 2011.

**RESPONSE:**

33. Admit that WGMA requested Change Order No. 10.

**RESPONSE:**

34. Admit that WGMA signed Change Order No. 10 on March 8, 2011.

**RESPONSE:**

35. Admit that WGMA requested Change Order No. 11.

**RESPONSE:**

36. Admit that WGMA signed Change Order No. 11 on March 8, 2011.

**RESPONSE:**

37. Admit that WGMA requested Change Order No. 12.

**RESPONSE:**

38. Admit that WGMA signed Change Order No. 12 on March 8, 2011.

**RESPONSE:**

39. Admit that WGMA requested Change Order No. 13.

**RESPONSE:**

40. Admit that WGMA signed Change Order No. 13 on March 8, 2011.

**RESPONSE:**

41. Admit that WGMA requested Change Order No. 14.

**RESPONSE:**

42.     Admit that WGMA signed Change Order No. 14 on March 14, 2012.

**RESPONSE:**

43.     Admit that code for Change Order No. 14 was delivered to WGMA on April 1, 2012.

**RESPONSE:**

44.     Admit that Change Order No. 14 was deemed complete and correct by WGMA on July 2, 2012.

**RESPONSE:**

45.     Admit that WGMA requested Change Order No. 15.

**RESPONSE:**

46.     Admit that WGMA signed Change Order No. 15 on April 12, 2011.

**RESPONSE:**

47.     Admit that WGMA requested Change Order No. 16.

**RESPONSE:**

48.     Admit that WGMA signed Change Order No. 16 on April 12, 2011.

**RESPONSE:**

49.     Admit that WGMA requested Change Order No. 18.1.

**RESPONSE:**

50.     Admit that WGMA signed Change Order No. 18.1 on May 3, 2011.

**RESPONSE:**

51.     Admit that WGMA requested Change Order No. 19.

**RESPONSE:**

52.     Admit that WGMA signed Change Order No. 19 on June 20, 2011.

**RESPONSE:**

53.     Admit that WGMA requested Change Order No. 20.

**RESPONSE:**

54.     Admit that WGMA signed Change Order No. 20 on June 20, 2011.

**RESPONSE:**

55.     Admit that WGMA requested Change Order No. 21.

**RESPONSE:**

56.     Admit that WGMA signed Change Order No. 21 on August 14, 2011.

**RESPONSE:**

57.     Admit that WGMA requested Change Order No. 22

**RESPONSE:**

58.     Admit that WGMA signed Change Order No. 22 on June 30, 2011.

**RESPONSE:**

59.     Admit that WGMA requested Change Order No. 25.

**RESPONSE:**

60.     Admit that WGMA signed Change Order No. 25 on December 28, 2011.

**RESPONSE:**

61.     Admit that WGMA requested Change Order No. 27.

**RESPONSE:**

62.     Admit that WGMA signed Change Order No. 27 on January 18, 2012.

**RESPONSE:**

63.     Admit that WGMA requested Change Order No. 28.

**RESPONSE:**

64.     Admit that WGMA signed Change Order No. 28 on January 18, 2012.

**RESPONSE:**

65.     Admit that WGMA relied on the advice of Derek Hall when signing the above change orders.

**RESPONSE:**

66.     Admit that WGMA relied on the advice of Job Garcia when signing the above change orders.

**RESPONSE:**

67.     Admit that WGMA relied on the advice of TriBridge when signing the above change orders.

**RESPONSE:**

68.     Admit that WGMA relied on the advice of Ignite Media when signing the above change orders.

**RESPONSE:**

69.     Admit that WGMA received the PAM license agreement via email on November 11, 2010.

**RESPONSE:**

70.     Admit that WGMA paid in full Interdyn Invoice No. INV0009711 dated 6/23/2011.

**RESPONSE:**

71.     Admit that WGMA paid in full Professional Advantage invoice No. 29461 dated 10/1/2011.

**RESPONSE:**

## SECOND SET OF INTERROGATORIES

11.    For each Request for Admission to which you answered anything other than an unqualified admission, please state the basis for your denial.

**ANSWER:**

12.    Identify and describe each non-monetary settlement term with former defendant BMI.

**ANSWER:**

13.    Identify and describe each non-monetary settlement term with former defendant Technology Support.

**ANSWER:**

14.    Identify and describe any indemnity or settlement arrangement you have with Sirius Solutions, Inc.

**ANSWER:**

15.    Identify and describe any indemnity or settlement arrangement you have with Derek Hall.

**ANSWER:**

16.    Identify and describe any other agreement you have related to this litigation.

**ANSWER:**

17.    Identify all documents referring to, relating to or comprising expert reports, analyses or opinions upon which you intend to rely in this litigation including, if applicable, by Bates range and author.

**ANSWER:**

## SECOND SET OF REQUESTS FOR PRODUCTION

24.     All documents responsive to previous requests generated, created or discovered since your last production of documents.

**RESPONSE:**

25.     All settlement agreements with former Defendant BMI related to this litigation.

**RESPONSE:**

26.     All settlement agreements with former Defendant Technology Support related to this litigation.

**RESPONSE:**

27.     All documents referring or relating to a settlement with BMI as to this litigation.

**RESPONSE:**

28.     All documents referring or relating to a settlement with Technology Support as to this litigation.

**RESPONSE:**

29.     All settlement or indemnity agreements with Sirius Solutions, Inc. related to this litigation.

**RESPONSE:**

30.     All settlement or indemnity agreements with Derek Hall related to this litigation.

**RESPONSE:**

31.     All documents referring or relating to a settlement or indemnity agreement with Sirius Solutions, Inc. as to this litigation.

**RESPONSE:**

32.     All documents referring or relating to a settlement or indemnity agreement with Derek Hall as to this litigation.

**RESPONSE:**

33.     All documents upon which you relied in responding to the Requests for Admission above.

**RESPONSE:**

34.       All documents upon which you relied in responding to the Interrogatories above.

**RESPONSE:**

35.       All expert reports, opinions or analyses by Derek Hall as it relates to his expert opinions in this case.

**RESPONSE:**

36.       All expert reports, opinions or analyses by Job Garcia as it relates to his expert opinions in this case.

**RESPONSE:**

37.       All expert reports, opinions or analyses by Vladimir Collak as it relates to his expert opinions in this case.

**RESPONSE:**

38.       All expert reports, opinions or analyses by Jeffrey Compton as it relates to his expert opinions in this case.

**RESPONSE:**

| WEST GULF MARITIME ASSOCIATION, INC. | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| BUSINESS MICROVAR, INC. D/B/A | § | |
| INTERDYN BMI, PROFESSIONAL | § | |
| ADVANTAGE AND TECHNOLOGY | § | |
| SUPPORT, INC. | § | 151ST JUDICIAL DISTRICT |

**PROFESSIONAL ADVANTAGE SOFTWARE SOLUTIONS, INC.'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Professional Advantage Software Solutions, Inc. ("Professional Advantage"), Defendant in the above-captioned and numbered cause, and files this Traditional and No-Evidence Motion for Summary Judgment as to all of Plaintiff West Gulf Maritime Association, Inc.'s ("WGMA") claims and in support hereof would respectfully show the Court the following:

WGMA's only remaining allegations are that (1) the project was allegedly not completed in the time period originally promised, and (2) PAM is allegedly flawed because the overtime calculation does not execute identically to the legacy system. However, WGMA can attribute no delay directly to any action by Professional Advantage and WGMA executed several change orders pushing out the original Go-Live date. Further, WGMA never provided Professional Advantage with the functional specifications it now states are required for the execution of the overtime calculation. When Professional Advantage tried to investigate this issue by requesting further information, WGMA withheld information, hired another vendor to replace PAM and filed this suit. Thereby, WGMA failed to notify Professional Advantage of a breach either of contract or of a warranty, and failed to give Professional Advantage an opportunity to cure any

EXHIBIT 10

alleged defect in the product.  For these reasons and those stated below, WGMA's claims fail and the Court should render summary judgment in favor of Professional Advantage.

## I.  SUMMARY OF THE ARGUMENT

1. Professional Advantage's motion is brought on the following grounds:

- WGMA's breach of implied warranties claims under the Texas Uniform Commercial Code are barred because WGMA failed to give Professional Advantage notice and an opportunity to cure any alleged defects in its software;

- WGMA's breach of express warranty claims are barred because there is no evidence that WGMA relied on any representations by Professional Advantage;

- WGMA's breach of contract claims are likewise barred because WGMA is unable to prove any breach by Professional Advantage of its obligations under the Functional Design Specifications, Statement of Work and subsequent Change Orders issued on the project; and

- WGMA's fraudulent inducement and negligent inducement claims are barred because WGMA is unable to show that it relied on any representation by Professional Advantage in entering any contract at issue in this matter.  Rather, WGMA hired an outside project manager specifically for this purpose and relied on his counsel, and their own in signing all project documents.

## II.  BACKGROUND FACTS

2.      This case involves a project wherein Plaintiff West Gulf Maritime Association, Inc. ("WGMA"), hired via separate agreements, Technology Support, Inc., Business Microvar, Inc., Tatum, LLC ("Tatum"), Sirius Solutions, L.L.L.P. ("Sirius") and Professional Advantage for a project related to WGMA's payroll, HR and accounting systems beginning in late 2010. According to WGMA, its legacy AS400 system was over 30 years old and was largely customized from the ground up over those years.  Further, WGMA's employee who had maintained the AS400 had retired.  The AS400 system proved very difficult to work with during the project in order to perceive its underlying functionality.

555262.1 PLD 0002573 8786 KLS

2

3.      According to WGMA's Original Petition and the discovery to date in this matter, WGMA and Defendant Business Microvar, Inc. d/b/a Interdyn BMI ("BMI") entered into an agreement ("the BMI Agreement") on October 4, 2010, regarding the implementation of Microsoft Dynamics Great Plains ("Dynamics GP") financial accounting system and Personnel Agency Management ("PAM"). *See* BMI Agreement attached hereto as Exhibit A.

4.      Also on October 4, 2010, WGMA entered an agreement with Tatum to oversee the project and, in part, to:

- Work with WGMA accounting and finance personnel to understand current accounting and reporting processes;

- Working with WGMA accounting and finance to identify current and future requirements for accounting and finance processes; and

- Recommending revised accounting and financial reporting processes for implementation with the implementation of Dynamics Great Plains.

*See* Tatum Agreement, attached hereto as Exhibit B.

5.      Professional Advantage was later hired to customize and deliver the code for the PAM system and entered into agreements with WGMA. These included a Statement of Work ("SOW") (Exhibit C at 1-17), Functional Design Specification for Rules Processing ("Rules Processing FDS") (Exhibit C at 18-31), Functional Design Specification for PAM Payroll Processing ("Payroll FDS") (Exhibit C at 32-41), and Functional Design Specification for Timesheet Processing ("Timesheet FDS") (Exhibit C at 42-72). These documents will collectively be referred to as the "Professional Advantage Agreements," and the Functional Design Specifications if referred to collectively will be referred to as "FDSs." Further, WGMA accepted PAM subject to Professional Advantage's license agreement which forms the basis of Professional Advantage's previously filed and pending Motion for Partial Summary Judgment.

6. WGMA had chosen Dynamics GP before meeting with or contacting either BMI or Professional Advantage. Further, WGMA chose Professional Advantage's proprietary PAM module based on the recommendation of BMI.

7. Prior to entering into the Professional Advantage Agreements, Professional Advantage's consultant Craig Erickstad traveled to Houston to visit WGMA and obtain its functional requirements for PAM. Mr. Erickstad was given information and documents which were then incorporated into drafts of the Professional Advantage Agreements. WGMA was unsatisfied with the scope of these documents and specifically with the functionality covered by the Scope of Work and FDS. WGMA specifically provided a list of Business Requirements to be included in the Professional Advantage Agreements which is reflected in the list which appears in Exhibit C at Pages 10-11.

8. WGMA's Nathan Wesely and Job Garcia, and Tatum's Derek Hall reviewed the Professional Advantage Agreements and had input into their contents before they were signed by Nathan Wesely on behalf of WGMA. Under the Statement of Work, WGMA had the following non-exclusive obligations:

> Perform the services and produce the deliverables described elsewhere in this Statement of Work and interact with Professional Advantage in a professional and workmanlike manner.

*See* Exhibit C at Page 9.

9. Further, under the Functional Design Specification for Rules Processing, the Critical Success Factors/Critical Business Issues included the "Ability to convert Calculate 'Overtime Due' based on the rules and calculation provided by WGMA and listed below." *See* Exhibit C at Page 20.

10.     The Professional Advantage Agreements include a provision for Change Management.  *See* Exhibit C at Page 8.  Specifically the SOW states:

> To maintain the project timeline and manage WGMA's requirement to install PAM11, a formal change management process will be implemented.  A change order will be prepared to document changes to the scope (e.g. any scope change that differs from the SOW.) or scheduled items.  To implement any scope change, the change order must be signed by both WGMA and PA.  PA will inform WGMA, about the impact to cost, resources and timelines for each change order.

*See Id*.

> Plans and milestones outlined within this document reflect agreed upon dates and any changes will require a Change Order request.

*See Id.* at Page 13.

11.     The same day that the Professional Advantage Agreements were signed, WGMA's Nathan Wesely sent a letter to BMI outlining his views regarding Professional Advantage's inclusion of WGMA's processes and needs in the Professional Advantage Agreements.  *See* Exhibit J.  Wesely complained of delays in the signing of the contract documents.  Specifically he stated that "PA's failure to capture the processes and needs of the West Gulf Maritime Association's payroll system had to be addressed and the **West Gulf Maritime Association had to complete the requirements before going forward**."  *See Id.* (emphasis added).  He further stated that the process of including the processes and needs in the Professional Advantage Agreements was complete.  *See Id.*

12.     During the course of the project and shortly after the installation of PAM, it became clear that WGMA was unable to provide requirements to Professional Advantage to include in the WGMA system related to overtime and the import of excel timesheets among other things.  Professional Advantage only recently discovered through production documents in this litigation, that rather than provide Professional Advantage with the requirements, with the

help of BMI and Sirius Solutions, LLP, WGMA developed the missing rules and calculations that WGMA was contractually obligated to provide Professional Advantage so that it could develop a system for WGMA's payroll needs. WGMA provided these rules and calculations to third-party IgniteMedia, LLC in developing a new solution to replace PAM using the rules and calculations that Professional Advantage had been requesting for seven months.

A. **Expert Report of Dave Coulombe.**

13. Professional Advantage's retained expert Dave Coulombe has been working in the general field of large scale software implementation and IT for 35 years. *See* CV attached to Affidavit of Dave Coulombe attached hereto as Exhibit D. More specifically, he led the teams who developed the Microsoft Dynamic Great Plains product, at issue in this litigation, for over 21 years. *See Id.* He is now retired and provides consulting services. *See Id.*

14. Coulombe opined that industry estimates are that companies replace their ERP system on average once every twelve years. *See* Exhibit D at page 1. The primary reasons for a twelve-year cycle are cost, complexity, and lack of strategic business need to replace a system. *Id.* The reason for replacement is typically driven by business needs that cannot be met by the existing solution, or the system is old and cannot be supported and maintained for a reasonable operating cost. *Id.* WGMA appears to have made the decision based on the age and cost of maintaining the existing system and perceived strategic value of acquiring more current software and hardware. *Id.*

15. New ERP projects are complex and as such must be viewed as a major change management project spanning business, functional, and technical areas, with a major focus on change management related to the people at the organization deploying the new product. *Id.* WGMA contracted with three companies to provide software/hardware and services to replace

an aging highly custom AS400 based solution. *Id.* As WGMA did not appear to have a single contract with a Systems Integrator it must be assumed that WGMA was acting as the overall Systems Integrator on the project. *Id.*

16. Based on the fact that change orders were drafted and subsequently signed by WGMA and returned to PA means that undiscovered business functional needs were not identified by WGMA during the development of the FDS documents, resulting in increased time and cost to the project. *Id.* at page 2.

17. With respect to the claims against Professional Advantage, the core issue that WGMA outlines over the life of the project is that the overtime calculation in certain circumstances differed from the AS400 system and the PAM system. *Id.* Even though WGMA was responsible for providing business and functional expertise to conduct user acceptance testing of the solution, it appears that even these WGMA experts could not identify the root cause of the difference. *Id.* This is not uncommon when moving from a highly custom solution used by one customer to a packaged software solution used by many customers. *Id.* Over time the custom solution will incorporate business rules and algorithms that are embedded in the source code of the application and are not adequately documented. *Id.* The actual root of the issue was discovered by WGMA after they filed the lawsuit against the various parties and related to a specific set of rules to calculate overtime in certain circumstances. *Id.* It is Dave Coulombe's expert opinion that it is completely unrealistic to believe that an outside consultant, no matter how much of a functional expert they are, could be expected to resolve a functional and technical issue such as the overtime issue when the business and functional experts at WGMA, who were responsible for the existing system and completing user acceptance testing for the new system, could not identify the root cause of the difference. *Id.*

18. In Coulombe's opinion, after reviewing the SOW and associated project documentation, PA fulfilled its commitments as it relates to the WGMA PAM project. *Id.* WGMA has offered no contrary expert testimony and has not requested Mr. Coulombe's deposition.

B. **Affidavit of Nathan Wesely.**

19. WGMA submitted the September 22, 2014, Affidavit of Nathan Wesely in support of its response to Professional Advantage's previously filed motion for summary judgment. The affidavit is attached hereto as Exhibit E. Therein, Nathan Wesely purports to support WGMA's claims against Professional Advantage.

20. Further, Mr. Wesely purports that he is "an expert in the payroll processing system WGMA used, including the system's infrastructure and functional requirements." See Id. at ¶6.

21. At the time of Wesely's affidavit, WGMA's contention was that the System failed "due primarily to BMI's and ProFad's failure to accurately define WGMA's necessary business and functional requirements and to provide the resources needed for the System to work." See Exhibit E at ¶13. WGMA claimed that "[a]t no time during the due diligence process, did ProFad advise WGMA that PAM would need extensive modifications." *See* Exhibit E at ¶12. However, WGMA states that it understood that PAM would need what WGMA calls "extensive modifications" by December 10, 2010. *See* Exhibit E at ¶10. Despite this opinion and the purported suspicion that BMI's Dynamic GP installation would be unstable (an issue unrelated to PAM), WGMA proceeded with the project. In fact, WGMA engaged the help of an outside firm, Tribridge, to review the project documents and Tribridge advised WGMA that it would meet

WGMA's business requirements. *See* Exhibit F, December 29, 2010, email from Rick Doss of Tribridge.

22. At the time of the September 22, 2014, Affidavit of Nathan Wesely, the only allegations against Professional Advantage were that (1) PAM required extensive modifications of which WGMA was allegedly not informed; and (2) the system was a "failure," and the only purported aspect of that "failure" attributable to Professional Advantage was purportedly the Overtime Calculation. To this day, no other issue or purported defect has been identified.

23. Contrary to WGMA's accusations embodied in Mr. Wesely's affidavit, WGMA was fully aware of the modifications WGMA itself requested for PAM to meet its purported business needs. As of November 5, 2010, these were outlined and contained in the Professional Advantage Agreements. *See* Exhibit C. These modifications were signed and agreed to by WGMA. *See Id.* In fact the agreements themselves specifically referred to the work contained therein as "customizations/enhancements/features." *See* Ex. C at pages 31, 41, and 72. And as "modifications" in other places. *See, e.g.*, page 16 under the heading "WARRANTY." As the project developed, additional functional needs (which were previously undiscovered and uncommunicated by WGMA and not included in the original Professional Advantage Agreements) were identified. WGMA requested and signed several change orders pursuant to the Change Management provision of the SOW. *See* Change Orders attached hereto as Exhibit G. These Change Orders included modifications to scope such as moving deadlines and Go-Live dates. *See, e.g.,* Exhibit G at Page 27. These changes and modifications were agreed to and signed by WGMA.

555262.1 PLD 0002573 8786 KLS

9

## C. Deposition of Nathan Wesely.

24. On April 23, 2015, Nathan Wesely was offered for deposition as WGMA's corporate representative. *See* Deposition of Nathan Wesely attached hereto as Exhibit H. Mr. Wesely has been president of WGMA since 2010. *See* Exhibit H at 8:19-20. Prior to that he was general counsel for WGMA. He is a labor and employment attorney and still maintains his license. *Id.* at 8:24-9:04. Prior to the project that forms the basis of this suit, WGMA was using an AS400 payroll system which was over 30 years old, installed in the 1980s, built exclusively for WGMA, and extensively customized over that period of time. *See Id.* at 17:11-18:18.

25. WGMA's breach of express warranty claim is based on the allegation that Professional Advantage's Craig Erickstad and Kathi Horvasol represented to WGMA that PAM would be able to consolidate payroll to be run by GP in the same manner that AS400 did. *See Id.* at 40:18-42:08. Those statements were purportedly made well prior to the compilation of the Professional Advantage Agreements and well prior to the November and December 2010 letters from Nathan Wesely cited above.

26. WGMA agrees that there was a change order process in place and that WGMA requested and signed change orders pursuant to that process which changed the scope of Professional Advantage's work. *See* Exhibit H at 53:14-54:10. It was WGMA's obligation to "Define, document, and approve change orders as necessary to address changes to the scope of work." *See Id.* at 56:25-57:04. And there were in fact change orders issued and signed that reflected missed dates and extensions. *See Id.* at 57:20-58:06. He agreed that he frequently depended on the project manager Derek Hall (first with Tatum and later with Sirius Solutions, Inc.) when determining whether to sign a change order. *See Id.* at 140:17 to 141:2.

27.     It is clear from Mr. Wesely's testimony that it was WGMA who was responsible for providing and in fact did provide its list of requirements and processes. *See Id.* at 58:17-20. Further, Mr. Wesely testified as follows:

Q. […]And this contains a list of critical factors that are to be implemented in PAM. Correct?

A. That is what it states.

Q.  And one of those is the "Ability to calculate overtime due based on the rules and calculation provided by WGMA and listed below."  Is that correct?

A. That is what it states.

Q. So did WGMA, in fact, provide rules and calculations to Professional Advantage?

A. I believe we did.

Q. Okay.  If we go to Page 11.

A. (Witness complies.)

Q. […]is there anything about processing adjusted time sheets on this page?

A. No, this is about processing overtime.

Q. Is there anything about how overtime should be handled for adjusted time sheets?

 A.  On this page, no.

Q. Okay.  To your knowledge, was there any -- was there ever any requirements, before the signing of this document, given to WGMA, regarding the handling of overtime for adjusted time sheets?

A. An adjusted time sheet is?

Q. Well, I thought you would know what that is.
Do you know what an adjusted time sheet is?

A. Well, you obviously have something in mind.

Q. Yeah.  I think it is a piece of data.  I don't think that it is actually -- I guess we can get into that later. But on this page, it does not say anything about adjusted time sheets. Correct?

A.  It does not.

Q.  Does it say anything about handling different types of time sheets and treating them differently for overtime?

A.  It does not.

*See Id.* at 70:04-71:03.

28.     For the first time in Mr. Wesely's deposition the contention was raised that PAM somehow was supposed to solve the issue of using Dynamics GP for running payroll for multiple companies. *See Id.* at 107:25-108:08.  Mr. Wesely was unable to articulate how utilizing PAM for one company would be different for multiple companies and how anything related to PAM caused the system to fail in this manner. *See Id.*  In fact, as Craig Erickstad later testified, PAM does not differentiate or work differently for multiple companies than it does for one company.

29.     As to the purported instability of Dynamic GP, Mr. Wesely was unable to identify how PAM specifically contributed to that issue. *See* 112:08-113:13.

30.     In fact, at the time this matter was filed, the overtime issue was one of at least 35 open issues on the project which were not limited to PAM but also comprised Tribridge, WGMA, Sirius Solutions, Interdyn and IgniteMedia. *See* Payroll Systems Key Issues Document, attached hereto as Exhibit I (the overtime issue appears therein as issue No. 161).

31.     According to the project documentation, the outstanding overtime issue that forms the basis for this case was first identified as a mismatch between AS400 and PAM on March 30, 2012.  Nothing in evidence indicates how any issue attributable to Professional Advantage delayed or caused the project to fail.

32.     The description outlines the progress on the overtime issue and states:

AS400 OT mismatch to PAM OT
Scenarios that show mismatches:
1- Both PAM & AS400 agree that worker is due OT pay, but disagree on the $ amount
2- AS400 states worker gets OT pay, but PAM does not
3- PAM Over 40 Report - workers are not listed that are on the AS400 Over 40 Report
4- Temporary Batch in PAM shows duplicates
4/17: Emmanuel is going to talk with Development about the details and then report to WGMA
4/24: PAM is still working to resolve the issue
-Not able to duplicate the issue, but has more data to help resolve -PAM does not have concrete solution yet.
5/1:
Craig - AS400 PDF File only 3 did not match
-Pay Type AD - determining why this is the issue and what the resolution would be
-Time sheets are for different weeks and therefore the worker did not have OT
*Craig will need the original timesheet and Job will send it to him
5/8: Adjustment TS came in for workers on last day of week, then $ amt was included in calc. The AS400 did not include the Adj. TS in the week and then an they did not match. Thi
- Need to review for WGMA Internal Team
5/15: WGMA to review issues
5/22: WGMA is still reviewing
1- Both PAM & AS400 agree that worker is due OT, but disagree on $ amount
2- AS400 states a worker should get OT, but PAM does not
3- PAM Over 40 Report shows worker not listed as OT Receipiants, buit AS400 does
5/29: WGMA needs to review
6/5, 6/12, 6/19, 6/26, 7/2, 7/9, 7/17, 7/24, 8/7, 8/17, 8/21, 8/30, 9/7, 9/14, 9/21, 10/1, 10/16: WGMA to Review -
10/30: WGMA has reviewed and it is still not working -Over 40/OT compared to AS400

*See* Exhibit I at Issue 161. As evidenced by this entry, Professional Advantage was working on the issue as early as April 17, 2012 and was requesting information related to this issue so that it could be resolved from May 1st through the filing of this lawsuit. The status of this issue indicates that WGMA was reviewing the issue and Professional Advantage was waiting for information related to this issue from May 29, 2012, through the filing of this lawsuit on October 4, 2012. Specifically, Professional Advantage was waiting for information regarding how AS400 was handling adjustment timesheets differently than PAM. *See* entry at 5/8. The final status states that it is "still not working" with no answer to the question of the adjustment timesheet issue. *See Id.*

33. Mr. Wesely conceded that nothing in the requirements provided to Professional Advantage by WGMA contained anything about the handling of adjustment timesheets in overtime. Further, the FDS related to rules processing contained no functionality related to adjusted timesheets. Despite being a purported "expert in the payroll processing system WGMA

used, including the system's infrastructure and functional requirements," Mr. Wesely was unable to define what an adjustment time sheet even was. *See* Exhibit H at 70:04-71:03.

34. Mr. Wesely finally conceded that WGMA hired Tatum to identify current and future requirements for WGMA's accounting and finance processes. *See* Exhibit H at 180:15-18. Nothing in the Professional Advantage Agreements attributes such an obligation to Professional Advantage. *See, generally*, Exhibit C.

35. During the period leading up to the lawsuit when weekly meetings were taking place and open issues were being discussed, not once did WGMA tell Professional Advantage that it was not meeting the terms of its agreement or that its software product did not conform to the FDSs. Nor did WGMA inform Professional Advantage of any breach of warranty. Instead, the issues being handled by Professional Advantage were being handled identically to all of the issues on the project which were handled by all of the parties on the project. And before Professional Advantage was given the chance to address the outstanding issues, WGMA hired a developer to replace PAM and filed this lawsuit. *See* Exhibit H at 158:23 to 159:9 (discussing design specifications for PAM replacement dated September 20, 2012).

### III. SUMMARY JUDGMENT STANDARD

34. A motion for summary judgment shall be granted if the pleadings and summary judgment evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c), (e); *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983). A party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact, and thus, it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant's summary judgment motion should be granted if the defendant disproves at least one

essential element of a plaintiff's cause of action. *Vela v. Rocha*, 52 S.W.3d 398, 402 (Tex. App.—Corpus Christi 2001, no pet.). Evidence favoring the motion for summary judgment is not considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). However, uncontroverted evidence that supports the summary judgment must be considered in the movant's favor. *Id.*

35. A defendant may conclusively establish, by way of competent summary judgment proof, that at least one essential element of the plaintiff's cause of action is missing. *Bradley v. Quality Svc. Tank Line*, 659 S.W.2d 33, 34 (Tex. 1983). Although a presumption exists for summary judgment purposes that the allegations contained in the plaintiff's pleadings are to be taken as true, where the defendant's summary judgment evidence conclusively negates at least one essential element of the plaintiff's cause of action, the plaintiff must come forward with competent summary judgment evidence to present a fact issue. *Torres v. Western Cas. & Surety Co.*, 457 S.W.2d 50, 52-53 (Tex. 1970).

36. A court may grant a no-evidence motion for summary judgment if the movant can show that an adequate time for discovery has passed, and the non-movant has no evidence to support one or more essential elements of his or her claim or defense. TEX. R. CIV. P. 166a(i). Under Rule 166a(i), the movant needs not produce any proof in support of its no-evidence claim. *Id.* Instead, the mere filing of a motion that specifically points out the elements as to which there is no evidence is enough to shift the burden to the respondent (non-movant) to come forward with enough evidence to take the case to a jury. *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d at 799-800. In other words, the burden to avoid summary judgment falls on the party who bears the burden of proving his or her case at trial - i.e., the Plaintiff in this case. *See Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 197 n.3 (Tex. App.—Houston [1st Dist.] 1997, pet.

denied) (commenting that under Rule 166a(i) the plaintiff as non-movant has the burden to raise a triable fact issue on each element essential to the plaintiff against each movant defendant). Accordingly, the non-movant is required to produce competent summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Norris*, 981 S.W.2d at 799-800. If the non-movant fails to adduce sufficient evidence to demonstrate the existence of a material fact issue upon which he or she could prevail at trial, Rule 166a(i) mandates that summary judgment be granted. *Id.*

## IV. AN ADEQUATE TIME FOR DISCOVERY HAS PASSED

37.    This case was filed over two years ago in October 2012. Although the case was abated for a time, it the abatement was lifted by agreement as of September 6, 2013, over a year ago. The parties have engaged in significant written discovery, exchanged expert disclosures. Plaintiff has taken the deposition of Professional Advantage employee Craig Erickstad. Professional Advantage has deposed WGMA's corporate representative. By agreement additional witness depositions are taking place during May. Even still, Rule 166a(i) "does not require that discovery must have been completed, only that there was 'adequate time.'" *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App—Houston [14th Dist.] 2000, pet. denied). As the case has been on file for over two years, an adequate time for discovery has passed. *See* TEX. R. CIV. P. 166a(i).

## V.  SUMMARY JUDGMENT EVIDENCE

Professional Advantage submits the following as summary judgment evidence in this matter:

Exhibit A - October 4, 2010, Agreement between BMI and WGMA;

Exhibit B - October 4, 2010, Agreement between Tatum and WGMA;

Exhibit C - November 5, 2010, Professional Advantage Agreements;

Exhibit D - Affidavit of Dave Coulombe;

Exhibit E - September 22, 2014, Affidavit of Nathan Wesely;

Exhibit F - December 29, 2010, email from Rick Doss;

Exhibit G - Change Orders;

Exhibit H - Deposition of Nathan Wesely;

Exhibit I - Payroll Systems Key Issues document;

Exhibit J - November 5, 2010, letter from Nathan Wesely;

Exhibit K -  Plaintiff West Gulf Maritime Association's First Amended Original Petition;

## VI.    ARGUMENT AND AUTHORITIES-

### A.    WGMA's breach of implied warranties pursuant to the UCC are barred.

38.    WGMA has briefed this court extensively on its contention that the contracts software at issue is a good and is therefore governed by the Texas Uniform Commercial Code. Further, WGMA's Amended Petition contains breach of express and implied warranty claims pursuant to Sections 2.314 and 2.315 of the Texas Business and Commerce Code (U.C.C.). *See* Plaintiff West Gulf Maritime Association's First Amended Original Petition attached hereto as Exhibit K.

39.    The following are the elements of an action for breach of implied warranty of merchantability:

- the defendant sold or leased goods to the plaintiff;

- the good were unmerchantable;

- the plaintiff notified the defendant of the breach; and

- the breach proximately caused the buyer to suffer injury.

See TEX. BUS. & COMM. CODE ANN. § 2.314, § 2.607(c)(1), § 2.714, and § 2.715; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667-668 (Tex. 1999).

40.     To prove a breach of implied warranty under Texas Business and Commerce Code Section 2.315 (fitness for particular purpose) a Plaintiff must show:

- the seller sold goods to the plaintiff;

- the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods;

- the goods were not suitable for that purpose;

- the buyer notified the seller of the breach; and

- the breach proximately caused the buyer to suffer injury.

See TEX. BUS. & COMM. CODE ANN. § 2.315, § 2.607(c)(1), § 2.714, and § 2.715.

### 1.      Traditional Motion for Summary Judgment

41.     Section 2.607 of the business and commerce code provides that once a buyer has accepted goods, he must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.  See TEX. BUS. & COM. CODE § 2.607(c)(1); *Lochinvar Corp. v. Myers*, 930 S.W.2d 182, 189 (Tex. App.-Dallas 1996, no writ) (observing that this notice requirement is designed to provide the seller an opportunity to cure any defect); *Bailey v. Smith*, 2006 Tex. App. LEXIS 4367 (Tex. App. Corpus Christi 2006).

42.     It is Professional Advantage's position that it delivered code that met the requirements in both the contract documents and the executed change orders.  However, at the time that this lawsuit was filed there was an open issue concerning a previously undiscovered functional aspect of AS400.  *See* Exhibit I at Issue 161.  Specifically, PAM and AS400 were

treating adjusted time sheets differently with respect to the overtime calculation. *See Id.* Despite several requests for information so that the issue could be addressed, Professional Advantage was never given the needed information.

43.     Not once did WGMA tell Professional Advantage that it was not meeting the terms of its agreement or that its software product did not conform to the FDSs. Nor did WGMA inform Professional Advantage of any breach of warranty. Instead, the issues being handled by Professional Advantage were being handled identically to all of the issues on the project which were handled by all of the parties on the project. And before Professional Advantage was given the chance to address the outstanding issues, WGMA hired a developer to replace PAM and filed this lawsuit. *See* Exhibit H at 158:23 to 159:9 (discussing design specifications for PAM replacement dated September 20, 2012).

44.     WGMA's failure to give notice to Professional Advantage of its contention that there was a breach of warranty bars WGMA from any relief under either breach of contract or breach of warranties. See TEX. BUS. & COM. CODE § 2.607(c)(1); *Lochinvar Corp. v. Myers*, 930 S.W.2d 182, 189 (Tex. App.-Dallas 1996, no writ) (observing that this notice requirement is designed to provide the seller an opportunity to cure any defect); *Bailey v. Smith*, 2006 Tex. App. LEXIS 4367 (Tex. App. Corpus Christi 2006). The lack of notice and opportunity to cure is corroborated by the testimony of WGMA's corporate representative. Therefore, no genuine issue of material fact exists and Professional Advantage is entitled to summary judgment on breach of express and implied warranties.

### 2.     No-evidence motion for summary judgment.

45.     Additionally, and in the alternative, summary judgment should be granted pursuant to Rule 166(a)(i) of the Texas Rules of Civil Procedure because there is no evidence of

breach of implied warranties. Further, there is no evidence that any action on the part of Professional Advantage has proximately caused WGMA specific harm. Since Plaintiff does not have any evidence to support one or more necessary elements, summary judgment should be granted as to the breach of implied warranties claims.

**B.**     <u>**WGMA's claim for breach of express warranty pursuant to the UCC is barred.**</u>

46.    WGMA's express warranty claim is based on the portion of Professional Advantage's statement of work in which it states that it will "[p]erform the services and produce the deliverables described [in the SOW] in a professional and workmanlike manner consistent with the highest standards practiced in Professional Advantage's industry." *See* Exhibit K at ¶42. Further Nathan Wesely represented that WGMA's express warranty claim was also based on the purported representation that the system would perform the same functionality as the AS400 system.

47.    To prove breach of express warranty under the Texas UCC, a Plaintiff must prove that the alleged warranty was given; that the warranty was breached; and that the breached proximately caused the injury complained of. *See generally* TEX. BUS. & COM. CODE § 2.313. The seller must make an affirmation of fact or a promise that relates to the goods and becomes part of the basis of the bargain. TEX. BUS. & COM. CODE § 2.313.

48.    Under Texas law concerning express warranties in contracts governed by the Uniform Commercial Code, a plaintiff must prove reliance as an essential element of the breach of express warranty claim. The Texas Supreme Court in *Compaq v. Lapray* addressed this issue as follows:

> Under Texas law, we have said that "reliance is . . . not only relevant to, but an element of proof of, plaintiffs' claims of breach of express warranty (to a certain extent) . . . ." [citation omitted] In an earlier case, we held: Though not a fraud-based claim, an

express warranty claim also requires a form of reliance. The Uniform Commercial Code provides that an express warranty is created when "any affirmation of fact or promise [is] made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." TEX. BUS. & COM. CODE § 2.313(a)(1) (emphasis added). "Basis of the bargain" loosely reflects the common-law express warranty requirement of reliance. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436, 40 Tex. Sup. Ct. J. 658 (Tex. 1997) (citing in part *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 575, 34 Tex. Sup. Ct. J. 690 & n.2 (Tex. 1991) *and Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779, 786 (Tex. 1967)).

*Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 676-677 (Tex. 2004).

### 1.     Traditional Motion for Summary Judgment.

49.     WGMA must prove that it relied on Professional Advantage's purported representations that PAM would offer the same functionality as the old AS400 system. However, the evidence shows no such reliance. Instead, the parties negotiated for specific functionality to be included in the contract documents. Professional Advantage went through extensive iterations of this document so that it would be comprehensive to WGMA's needs. In fact, throughout the project, when functionality was identified which was not included in the implementation, the parties executed change orders to broaden the scope of the Professional Advantage documents. This indicates, beyond any hindsight speculation, that during the project the parties' relationship was governed by the scope and functionality contained within the contract documents, not the ephemeral functionality buried in the AS400 system.

50.     Further, WGMA did not expect to rely on Professional Advantage to discern its own business and functional requirements. In fact, it hired Tatum specifically for this task. *See* Exhibit B.

51.     Although Professional Advantage had no obligation or duty to do so, WGMA has failed to allege any facts which would show that Professional Advantage knew or should have discovered that the AS400 handled adjusted time sheets differently in some cases but not in

others either before the project began or before April 2012 when it was first discovered by WGMA. In fact, the evidence suggests otherwise. Despite testing and working on the overtime rules for 1.5 years, the issue did not show up in testing until April 2012. Nothing in documents prior to this time indicates that any amount of investigation would have uncovered this difference. It was not spotted by Professional Advantage but it was also not spotted by Tatum and Tribridge who were both hired to review the system and requirements. Further, it was not discovered by Job Garcia, who is the main contact for WGMA on the project and was tasked with providing all necessary information to Professional Advantage for WGMA's requirements.

52.     Professional Advantage did not have the duty to recognize that WGMA had represented incomplete or incorrect functional needs from the outset of the project. This is not something that Professional Advantage could have anticipated, nor was it something that Professional Advantage had the duty to investigate or recognize: neither by contract nor by any standard in tort. Instead, WGMA had the contractual duty to provide the information. *See* Exhibit C. And Tatum had the duty to assist in gathering the information. *See* Exhibit B. Professional Advantage was entitled to, and did, rely on WGMA and its project manager(s) to fulfill these duties and provide the correct information.

53.     Finally, there is no evidence that any breach by Professional Advantage was the proximate cause of any damage to WGMA. In fact, Nathan Wesely was unable to parse out which part of WGMA's alleged damages were attributable to Professional Advantage and which were attributable to the other defendants or other issues.

54.     There is no genuine issue of material fact as to the absence of the essential elements of reliance and proximate cause. WGMA's claim for breach of express warranty should be dismissed in summary judgment.

## 2. No-Evidence Motion for Summary Judgment.

55.     Additionally, and in the alternative, summary judgment should be granted pursuant to Rule 166(a)(i) of the Texas Rules of Civil Procedure because there is no evidence of breach of express warranty.   Specifically there is no evidence of breach, of reliance, or of proximate cause. Since Plaintiff does not have any evidence to support one or more necessary elements, summary judgment should be granted as to the breach of express warranty claim.

## C.     WGMA's breach of contract claim is barred.

56.     To prove its breach of contract claim, the Plaintiff must prove the following essential elements: (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804, 815 (Tex. App.-Dallas 2003, pet. denied).

## 1. Traditional Motion for Summary Judgment.

57.     WGMA's breach of contract claim is based on the contention that Professional Advantage failed to "design and install a fully functional PAM module that would meet WGMA's specific requirements." *See* Exhibit K at ¶33.  However WGMA has provided no evidence that PAM as installed in any way does not conform to the Professional Advantage Agreements or the subsequent change order documents.  The only outstanding issue is the overtime issue with respect to adjusted timesheets.  The purported need for this functionality was discovered by WGMA well after the project documents were signed.  Nathan Wesely admits that the treatment of adjusted timesheets or the treatment of different types of timesheets by PAM for the overtime calculation was not contained in the original contract.  Therefore, no genuine issue

of material fact exists and Professional Advantage is entitled to summary judgment on breach of contract.

### 2. No-evidence Motion for Summary Judgment.

58. Additionally, and in the alternative, summary judgment should be granted pursuant to Rule 166(a)(i) of the Texas Rules of Civil Procedure because there is no evidence of breach of contract. In particular, there is no evidence that Plaintiff performed; that Professional Advantage breached any contract; or that Plaintiff was damaged as a result of the breach. *Barnett*, 123 S.W.3d at 815. Since Plaintiff does not have any evidence to support one or more necessary elements, summary judgment should be granted as to the breach of contract claim.

### D. WGMA's claims for fraudulent/negligent inducement are barred.

59. To prove a cause of action for fraudulent inducement in Texas, a Plaintiff must first prove the elements of fraud: (1) a material misrepresentation which was false was made; (2) the misrepresentation was known to be false when made or was asserted without knowledge of its truth; (3) the misrepresentation was intended to be acted upon; (4) the Plaintiff did rely and act upon the misrepresentation to his detriment. *Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d 41, 47-48 (Tex. 1998). In the context of fraudulent inducement to contract, a promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *See Id.* at 48. However the mere non-performance of a contract is not evidence of fraud. *See Id.* Essentially, WGMA must present evidence that Professional Advantage made representations with the intent to deceive and with no intention of performing as represented. *See Id.*

60.     For negligent inducement, the standard is not whether the representation was knowingly false but whether the defendant acted with proper care as to its truth.  *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998).

### 1.     Traditional Motion for Summary Judgment.

61.     The Court need not look at any element with regard to WGMA's negligent inducement claim.  This claim cannot survive as it does not set forth an independent injury.  As the Texas Supreme Court held in *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* if no independent injury is shown, outside the duties owed in contract, a negligent inducement claim must fail.  *See Id.*  WGMA's negligent inducement claim is based on the alleged misrepresentation by Professional Advantage that it could provide WGMA with the functionality it required.  *See* Exhibit K at ¶38.  WGMA's contract claim is based on the allegation that Professional Advantage "fail[ed] to design and install a fully functional PAM module that would meet WGMA's specific requirements."  These are identical injuries.  Therefore WGMA's negligent inducement claim must be dismissed in its entirety as a matter of law.

62.     As to WGMA's fraudulent inducement claim, there is no evidence the Professional Advantage fraudulently represented anything related to the functionality of PAM.  It relied solely on WGMA to provide the functionality it required from its old AS400 system.  In fact, the evidence shows that WGMA did not rely on Professional Advantage to acquire this information.  Instead it engaged Tatum to "identify current and future requirements for accounting and finance processes."  *See* Exhibit B.  Further, the Professional Advantage agreement contemplated that WGMA would provide all needed functionality and that the contract documents themselves comprised that functionality.  The parties went through several

iterations of this functionality to ensure that it was included. There is no evidence to suggest that Professional Advantage did not perform as promised in the agreements.

63. There are no genuine issues of material fact as to the absence of the essential elements of an actionable misrepresentation and reliance by WGMA. WGMA's claim for fraudulent inducement should be dismissed in summary judgment.

## 2. No-evidence Motion for Summary Judgment.

64. Additionally, and in the alternative, summary judgment should be granted pursuant to Rule 166(a)(i) of the Texas Rules of Civil Procedure because there is no evidence of breach of contract. In particular, there is no evidence that that Professional Advantage made representations with the intent to deceive and with no intention of performing as represented or that WGMA relied on such representations. Since Plaintiff does not have any evidence to support one or more necessary elements, summary judgment should be granted as to the fraudulent inducement claim.

WHEREFORE, PREMISES CONSIDERED Defendant Professional Advantage Software Solutions, Inc. prays that the Court grant its Motion for Summary Judgment dismissing all of Plaintiff's claims, and for such other and further relief, both general and special, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

By:_____
      Katherine L. Sunstrom
      Texas Bar 24037538
2900 North Loop West, Suite 500
Houston, TX  77092
(713) 868-5560
(713) 864-4671 – FAX
ks@lorancethompson.com
***Attorney for Defendant***
***Professional Advantage Software Solutions, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2015 a true and correct copy of the foregoing instrument was served electronically, in person, by mail, by commercial delivery service, by fax, or by email, to the following counsel of record:

Timothy M. McCloskey/Blake E. Rizzo
Carrigan, McCloskey, and Roberson LLP
945 Heights Blvd
Houston, Texas 77008

_____
Katherine Sunstrom

555262.1 PLD 0002573 8786 KLS